**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IVAN BENNETT WILLIS,

    Defendant - Appellant.

No. 15-6102

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:13-CR-00267-C-1)**
_____

Jacquelyn L. Ford, Ford Law Firm, Oklahoma City, Oklahoma (Jack Dempsey Pointer, Pointer Law Office, Oklahoma City, Oklahoma, with her on the briefs), for Defendant-Appellant.

K. McKenzie Anderson, Assistant United States Attorney (Mark A. Yancey, Acting United States Attorney, and Rozia McKinney-Foster, Assistant United States Attorney, with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

## I.  INTRODUCTION

Appellant Ivan Bennett Willis was charged with aggravated sexual abuse committed in Indian country. Mr. Willis admitted he had sex with a seventeen-year-

old acquaintance, K.M., and that the events occurred in Indian country. But Mr. Willis maintained that K.M. consented to the encounter. Thus, the only issue at trial was whether Mr. Willis used force against K.M. After a two-day trial, the jury returned a guilty verdict.

Mr. Willis now appeals, challenging multiple evidentiary rulings by the district court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## II.   BACKGROUND

### A.   *Factual History*

Throughout the summer and fall of 2013, K.M. lived with her cousin, Jamee Black, and Ms. Black's boyfriend, Wesley Bear. On the evening of September 22, 2013, K.M. was babysitting the couple's two children while Mr. Bear and Ms. Black were working. Mr. Bear's sister, Christi Bear, came to the Bear/Black home with her boyfriend, Mr. Willis. Ms. Bear and Mr. Willis left their son with K.M. while Mr. Willis drove Ms. Bear to work.

When Mr. Willis returned, instead of picking up his son and leaving, he began making sexual advances toward K.M. After K.M. rejected Mr. Willis's suggestion that they have sex, Mr. Willis took her into the bathroom. Despite K.M.'s continued objections, Mr. Willis pulled down her shorts and underwear, removed his pants, pressed his body against hers, and tried to make her "touch his private area." Although K.M. continued to say no, Mr. Willis lifted her onto the sink and tried to penetrate her. While continuing to resist, K.M. slid off the sink and tried to pull up her shorts, but Mr. Willis pushed her. K.M. stumbled and caught herself on the toilet,

2

and Mr. Willis penetrated her from behind. K.M. stopped resisting at this point because she was scared and "didn't know what to do."

Mr. Willis left the house but later returned "to check on [K.M.] because he knew [she] was crying." K.M. testified that Mr. Willis "asked if it felt like he forced [her]," and she said yes.

K.M. called Ms. Black and asked if someone else could watch the children. Ms. Black then called Mr. Bear, who returned home to check on K.M. When Mr. Bear arrived, he found K.M. crying and asked what was wrong. Before K.M. answered, Mr. Bear's three-year-old daughter said, "Daddy, I saw Uncle Ivan kissing [K.M.] in the bathroom." K.M. began crying harder and explained that Mr. Willis had forced her into the bathroom and forced himself on her. Mr. Bear immediately called the Bureau of Indian Affairs (BIA) police and BIA officers arrested Mr. Willis a few hours later.

### B. *Procedural History*

On November 12, 2013, a federal grand jury returned a single-count indictment alleging that Mr. Willis "knowingly engaged and attempted to engage in a sexual act with [K.M.], by using force."

In a pretrial motion, the government gave notice of its intent to offer evidence pursuant to Rule 413 of the Federal Rules of Evidence of two prior sexual assaults involving Mr. Willis while he was a juvenile. Mr. Willis filed a motion to exclude his juvenile records and all information gleaned from those records, including the Rule 413 evidence. He also moved to suppress statements he made during a custodial

3

interview with two federal agents. And Mr. Willis moved under Rule 412 to admit evidence of specific instances of K.M.'s sexual behavior. The district court admitted the Rule 413 evidence and denied Mr. Willis's remaining motions.

The parties tried the case to a jury in the United States District Court for the Western District of Oklahoma. The jury found Mr. Willis guilty. He now appeals.

## III. DISCUSSION

On appeal, Mr. Willis challenges the district court's evidentiary rulings, described above. He further asserts that an investigating agent improperly vouched for K.M.'s credibility when he testified at trial. Finally, Mr. Willis argues he is entitled to a new trial based on cumulative error. We address each of these issues in turn.

### A. *Evidence of Prior Sexual Assaults*

Mr. Willis first argues the district court erred by admitting evidence of the two prior sexual assaults. We review the admission of evidence for abuse of discretion, *United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008), and will not reverse if the district court's ruling "falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical," *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012) (internal quotation marks omitted).

In addition, events before and during trial may determine the scope of our review. "We have stated often the general rule that in evaluating the correctness of the district court's rulings, the appellate court may consider the entire record developed from the trial even though such evidence may not have been presented

4

during the suppression hearing," but we have applied the rule in practice "only in cases in which the trial evidence *supported* the district court's earlier ruling at the suppression hearing." *United States v. Parra*, 2 F.3d 1058, 1065 (10th Cir. 1993) (internal quotation marks and brackets omitted). "Because 'the district court should have the first opportunity to correct its mistake,' we ordinarily 'will not consider trial evidence which undermines a district court decision rendered at a pretrial suppression hearing.'" *United States v. Bass*, 661 F.3d 1299, 1303 (10th Cir. 2011) (quoting *Parra,* 2 F.3d at 1065). "The district court may consider trial testimony if the defendant renews the suppression motion at trial, but the court ordinarily need not do so if counsel fails to alert the court to how the evidence has been altered or supplemented at trial and why the change would affect the ruling." *Id.* (citation omitted). In *Bass*, the defendant "renewed his motion [to suppress] twice at trial but the renewals were perfunctory" because the defendant merely stated he wanted to renew his objection. *Id.* The defendant "did not so much as hint that he believed he had a ground for suppression that had not been fully vetted at the suppression hearing." *Id.* Accordingly, "we address[ed] only the record from the suppression hearing." *Id.* at 1304.

Here, the district court held a pretrial evidentiary hearing before ruling on the admissibility of the prior-acts evidence. Specifically, the two women who claimed to be victims of the prior sexual assaults testified about the circumstances surrounding those events, and, based on their testimony, the district court admitted the evidence under Rule 413. At trial, however, both women testified differently than they had at

5

the evidentiary hearing. When the government rested, Mr. Willis stated only that he "object[e]d to Federal Rule 413 witnesses, [A.M.] and [A.N.], being present." Mr. Willis did not identify new grounds for excluding the Rule 413 evidence and did not otherwise explain why the district court should reconsider its pretrial evidentiary ruling in light of the new testimony provided at trial. We therefore limit our review to the evidence presented at the pretrial hearing and do not consider trial evidence contradicting the district court's decision.

In criminal sexual-assault cases, a district court may "admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). Indeed, we have recognized a "presumption in favor of admission" of such evidence. *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998). But before evidence is admitted under Rule 413, the district court must determine whether the evidence "meet[s] three threshold requirements": (1) that the defendant is accused of a sexual-assault offense; (2) that the evidence is evidence of another sexual-assault offense by the defendant; and (3) that the evidence is relevant. *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998).

Although there is no dispute that Mr. Willis was accused of sexually assaulting K.M., Mr. Willis contends the other incidents did not rise to the level of sexual assault. And he asserts the evidence was not relevant. Moreover, even if the evidence were relevant and otherwise satisfied Rule 413's requirements, Mr. Willis argues the district court should have excluded the evidence under Rule 403 as substantially more prejudicial than probative.

6

## 1. Evidence of Other Sexual Assaults

At the pretrial evidentiary hearing, the district court first heard testimony from A.M.,[1] a woman who dated Mr. Willis in middle school. A.M. testified that, in 2007, after they had stopped dating, she and Mr. Willis ran into each other at a basketball game. She voluntarily left the game with Mr. Willis and began "making out" with him in a dugout on the high school softball fields. According to A.M., she consented to the kissing but told Mr. Willis to stop when he touched her breasts, laid her down, and "got on top." She testified that she told him repeatedly to stop and when he did not, she eventually hit or shoved him. Mr. Willis then stopped but "started laughing at [A.M.], and then he told [her] not to tell anybody." On cross-examination, A.M. testified she could not remember whether she hit or pushed Mr. Willis. She also admitted that, in interviews right after the incident, she had told police that Mr. Willis had stopped after she said no and told him she had a boyfriend. The incident was reported to the police, but no charges were filed against Mr. Willis.

Mr. Willis argues this incident was "nothing more than a teenaged make-out session which was terminated when [A.M.] said so." But, under Rule 413, "sexual assault" includes "any conduct prohibited by 18 U.S.C. chapter 109A." Among other things, Chapter 109A criminalizes "abusive sexual contact," i.e., sexual contact achieved by using force or by threatening or placing the other person in fear of death, serious bodily injury, or kidnapping. 18 U.S.C. §§ 2241(a), 2244(a)(1). "Sexual

---

[1] Because A.M. and A.N. were both minors at the time of the alleged sexual assaults, we use their initials rather than their full names.

7

contact," in turn, is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18. U.S.C. § 2246(3). And the level of force necessary under § 2251(a)(1) includes "such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim." *United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000) (internal quotation marks omitted) (interpreting the word "force" in applying sentencing enhancement under U.S.S.G. § 2A3.1(b)(1), which permits a four-level increase if the offense involves conduct prohibited by § 2241(a)).

Although A.M. testified inconsistently about whether she had to physically push or hit Mr. Willis, if the factfinder believed her testimony, there was sufficient evidence to establish an offense under 18 U.S.C. § 2241(a). A.M. testified Mr. Willis intentionally touched her breasts, laid her down, and got on top of her despite her protests. After Mr. Willis stopped, he told A.M. not to tell anybody, and A.M. was disturbed enough that she reported the incident to her counselor, who reported it to the police. And Mr. Willis's lying on top of A.M. until she hit or pushed him, could be considered physical force sufficient to restrain A.M. Although the question is close, we cannot conclude the district court abused its discretion in determining the incident qualified as a sexual assault for purposes of Rule 413.

At the pretrial evidentiary hearing, the district court also heard from A.N., a woman who testified that she and Mr. Willis grew up in the same neighborhood in

8

Choctaw, Mississippi. In 2008, when Mr. Willis was sixteen and A.N. was fourteen or fifteen, Mr. Willis was at A.N.'s house while A.N.'s mother was drinking with a group of friends. Mr. Willis and A.N. also began drinking and, at some point, A.N. passed out. A.N. recalled sitting in the kitchen drinking, but her next memory was waking up in a bedroom as her mother banged on the door. As A.N. awoke, she felt "some pain in [her]" and felt someone on top of her. And when A.N.'s mother turned on the lights, Mr. Willis stood up from the bed and A.N. saw that she and Mr. Willis were not wearing pants or underwear. A.N. reported the incident to a neighbor, who called the police. Mr. Willis was charged with rape but ultimately pled guilty to battery.

Mr. Willis argues there was no sexual assault because there was no evidence of lack of consent and no evidence of a sexual act because A.N. was unconscious. The district court construed the incident as conduct that would violate 18 U.S.C. § 2242(2), which makes it a crime to "engage[] in a sexual act with another person if that other person is . . . (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." A.N. testified—and Mr. Willis did not dispute—that when she regained consciousness, Mr. Willis was on top of her, she felt pain in her groin area, and neither she nor Mr. Willis were wearing underwear. This evidence supports the district court's conclusion that a sexual act occurred while A.N. was incapacitated and unable to consent.

9

## 2. Relevance

The district court must also make a threshold determination of relevance—"that is, the evidence must show both that the defendant had a particular propensity, and that the propensity it demonstrates has a bearing on the charged crime." *Guardia*, 135 F.3d at 1332.

Here, whether Mr. Willis used force to overcome lack of consent was the only disputed issue at trial. And the evidence tended to show that, in each prior incident, Mr. Willis engaged in sexual activity where the other party either did not or could not consent. Thus, the prior-acts evidence demonstrated a propensity that was directly relevant to the only issue for the jury to decide.

## 3. Rule 403

Finally, the district court was required to decide whether the evidence was admissible under Rule 403 of the Federal Rules of Evidence. *Id.* at 1330. This analysis requires balancing of multiple factors, including how clearly the prior act was proved, how probative it is to the material fact, how seriously disputed the material fact is, and whether the government can use any less prejudicial evidence. *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007).

When the district court made its pretrial decision, "[n]either party addresse[d] whether the government [could] obtain less prejudicial evidence." The district court therefore did not weigh this factor but found the other factors weighed in favor of admission. First, as explained above, both A.M. and A.N. testified at the pretrial hearing, and their testimony supported a finding that each act occurred. And the

10

material fact—whether Mr. Willis used force to overcome lack of consent—was the only issue and was hotly disputed. In considering the final factor, the probative value of the prior-acts evidence, the analysis

> will depend on innumerable considerations, including the similarity of the prior acts to the acts charged, the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim.

*Guardia*, 135 F.3d at 1331 (citations omitted).

Here, the factors related to the probative value of the evidence weigh in favor of admission. First, the acts are quite similar. Each incident involved a girl in her mid- to late teens who was Mr. Willis's friend or acquaintance. In each situation, the events escalated from what could be considered harmless interaction to a situation of forced sexual activity. And in each instance, Mr. Willis disregarded the lack of consent of the female involved. Although the prior acts happened in 2007 and 2008 and thus there was a "five-year time lapse between the prior acts and the act charged," the district court correctly concluded the lapse "does not negate [the prior acts'] probative value." Indeed, we have held "there is no time limit beyond which prior sex offenses by a defendant are inadmissible." *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997). The five-year lapse here is not sufficiently long to undermine the probative value of the evidence. Moreover, there was no need for evidence beyond the testimony of A.M. and A.N. to establish the prior sexual assaults. *Cf. Guardia*, 135 F.3d at 1331–32 (affirming the exclusion of prior-acts evidence under Rule 403 where an elaborate presentation including expert testimony

11

would have been required to explain each prior incident and whether it was appropriate under the standard of care applicable to the defendant-physician).

Mr. Willis argues the Rule 413 evidence was not sufficiently probative under Rule 403 because the prior acts occurred while he was a juvenile. But, as explained below, the district court did not err in denying Mr. Willis's motion related to his juvenile records. Moreover, Mr. Willis has not cited any authority for the proposition that juvenile misconduct is per se inadmissible under Rule 413. *See United States v. Caplette*, 365 F. App'x 833, 834 (9th Cir. 2010) (unpublished) ("The fact that the prior crime was committed by [the defendant] while he was a juvenile may be an appropriate consideration in determining whether to admit evidence of that crime, but . . . evidence of a juvenile crime is not categorically inadmissible.").[2] Thus, the mere fact that Mr. Willis was a minor at the time of his alleged sexual assaults against A.M. and A.N. does not render evidence of those events inadmissible, and we cannot say his status as a juvenile conclusively outweighs the other factors showing the probative value of the evidence.

In sum, the district court analyzed the evidence presented at the evidentiary hearing, had the opportunity to assess the demeanor of the witnesses, and concluded the Rule 413 requirements were satisfied and any potential prejudice did not

---

[2] Although not precedential, we find the reasoning of unpublished opinions, including those from other jurisdictions, instructive. *See* 10th Cir. R. 32.1 ("Unpublished opinions are not precedential, but may be cited for their persuasive value."); Fed. R. App. P. 32.1; *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 904 n.2 (10th Cir. 2015) ("Although unpublished, out-of-circuit district court opinions lack precedential value, we find the reasoning of such decisions cited here to be instructive under the circumstances of this case.").

12

substantially outweigh the probative value of the evidence. This conclusion was not an abuse of discretion.

## B. *Juvenile Records*

Mr. Willis also challenges the means by which the government obtained the prior-acts evidence. In an interview with two federal agents, Mr. Willis disclosed that, on two prior occasions, he had been accused of sexual offenses, both of which occurred while Mr. Willis was a minor living in Mississippi. The agents investigated further by requesting Mr. Willis's records from the Choctaw Tribal Youth Court (the Tribal Court). And the Tribal Court released Mr. Willis's juvenile records to FBI Special Agent Scott Billings, who used the records to identify and contact A.M. and A.N.

Mr. Willis argues the records were available only because the Tribal Court failed to follow its expungement rules. In particular, Choctaw Youth Code § 11-3-35 mandates the destruction of juvenile records when a minor turns eighteen and has completed the terms of his probation. Because the Tribal Court failed to destroy Mr. Willis's records, he asserts "a Due Process interest in making sure that the Mississippi Band of Choctaw Indians follows its own unambiguous rules regarding the destruction of such records."[3]

---

[3] At oral argument on appeal, Mr. Willis for the first time asserted that his due process rights were violated not by the mere release of his juvenile records but because Agent Billings was able to secure a copy of the juvenile records, despite the Tribal Court's refusal to release the records to defense counsel. Because this argument was raised for the first time at oral argument, it is "considered waived." *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998). Moreover,

13

But we have previously rejected the argument that a statute requiring expungement creates a due process right preventing post-expungement disclosure of a defendant's criminal history. In *Nilson v. Layton City*, we recognized "that the right to privacy safeguards individuals from government disclosure of personal information," but the protection does not apply to expunged criminal records because a defendant has no legitimate expectation of privacy related to such records. 45 F.3d 369, 371–72 (10th Cir. 1995); *see also Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699 (5th Cir. 1997) ("There is no constitutional basis for a 'right to expungement.'"); *Duke v. White*, 616 F.2d 955, 956 (6th Cir. 1980) ("The right to expungement of state records is not a federal constitutional right.").

Mr. Willis urges us to apply a different rule to juvenile records, citing heightened privacy concerns applicable in juvenile cases. Here, however, we are not required to and do not decide whether *Nilson* applies to juvenile expungement. Even if we assume Mr. Willis had a due process right in having his juvenile records destroyed, without a showing of prejudice we would still affirm the district court's decision. *See United States v. Caceres*, 440 U.S. 741, 752–53 (1979) (concluding that IRS's failure to follow its own regulations did not constitute a due process violation absent a showing of prejudice resulting from reasonable reliance on compliance). Mr. Willis cannot make such a showing here.

---

Mr. Willis conceded he obtained a copy of his records from the government at or before the pretrial evidentiary hearing. And Mr. Willis has shown no prejudice from the delay in receiving his records.

14

Mr. Willis concedes he disclosed the earlier incidents and thereby gave the federal agents the necessary information to independently investigate the previous assaults and to identify witnesses, even without the use of his juvenile records. Although use of the records likely simplified the agents' investigation, Mr. Willis cannot demonstrate prejudice resulting from the release of his juvenile records due to his own disclosure of the prior sexual encounters. *Cf. United States v. Griffin*, 48 F.3d 1147, 1150 (10th Cir. 1995) (holding the independent-source doctrine "permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality"). We therefore reject his due process argument.

### C. *Custodial Statements*

Mr. Willis also asserts the district court should have granted his motion to suppress his statements to the federal agents, which he argues "were involuntary and illegally obtained."[4] We are not persuaded.

At the suppression hearing, BIA Special Agent Andrew Willey and FBI Special Agent Scott Billings testified about their interactions with Mr. Willis. Agent Willey testified that he began investigating K.M's allegations on September 22 and

---

[4] After the government rested at trial, Mr. Willis perfunctorily stated that he "re-urge[d] his motion to suppress," but he failed to argue that one of the agents provided testimony not given at the suppression hearing and failed to explain how the new testimony might have altered the district court's decision. Accordingly, we limit our review to the evidence presented at the pretrial hearing and do not consider any trial evidence that contradicts the district court's denial of the motion to suppress. *See United States v. Bass*, 661 F.3d 1299, 1303–04 (10th Cir. 2011).

15

contacted Agent Billings to assist. Both agents went to KCDC to interview Mr. Willis on September 25, 2013.

After introducing themselves to Mr. Willis, the agents explained they wanted to talk about K.M.'s allegations of sexual assault and presented Mr. Willis with a form explaining his *Miranda* rights. Mr. Willis read the form, acknowledged he understood it, and asked for an attorney. The agents immediately acknowledged they could not ask about the sexual-assault allegations. But they told Mr. Willis if he changed his mind and wanted to talk, he should contact them.

The agents then stayed with Mr. Willis for about thirty minutes, until correction officers returned. During this time, Agent Willey asked for, and Mr. Willis provided, routine personal information, including date of birth, social security number, height, weight, and place of birth. Agent Willey also explained the investigation might lead to charges different than those for which Mr. Willis had been arrested, and Mr. Willis asked if he would be appointed a public defender.

As the agents prepared to leave, Mr. Willis asked if it was too late to change his mind and to speak with them. The agents asked if he meant right then or after he talked to an attorney, and Mr. Willis "clarified . . . that he was talking about right at the moment." Agent Billings reminded Mr. Willis of his *Miranda* rights by again having him read the waiver form and specifically informed Mr. Willis that "he was waiving his attorney and that he could stop talking at any time if he wanted to." After Mr. Willis again read the waiver form, Agent Billings verbally confirmed, point by point, that Mr. Willis understood his rights. Mr. Willis signed the form before the

16

agents asked any questions about K.M.'s allegations. Both agents testified they did not use any physical or emotional pressure against Mr. Willis. Mr. Willis did not introduce any evidence to the contrary.

After signing the form, Mr. Willis gave a verbal statement to Agents Willey and Billings and then prepared a written statement while the agents were present. In total, the interview lasted about an hour and a half.[5]

After hearing this evidence, the district court orally denied the motion to suppress. It later issued a written order concluding that Mr. Willis spoke to Agents Willey and Billings after knowingly and voluntarily waiving his right to counsel and to remain silent.

Relying on *Edwards v. Arizona*, 451 U.S. 477 (1981), Mr. Willis contends the district court erred in reaching that conclusion. In *Edwards*, the Supreme Court held that if a defendant "expresse[s] his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*." *Id.* at 484 (emphasis

---

[5] The agents did not record the interview, but Agent Willey took notes and Agent Billings prepared a summary. Mr. Willis argues law enforcement should have recorded all interviews in this case, but he has not provided any authority to support the conclusion that a failure to record a defendant's statement, standing alone, warrants suppression. Mr. Willis cites *United States v. Bundy*, 966 F. Supp. 2d 1180 (D.N.M. 2013), but there, the officers' reports lacked critical information and the officers were unable to recall the details of the interrogation. *Id.* at 1187. Thus, the lack of recording was important because there was nothing to help fill in the missing details in the report or to otherwise refresh the officers' memories. Here, the agents recalled the interview with Mr. Willis and also had access to their notes.

added). The Supreme Court has since instructed that, "*Edwards* does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities." *Minnick v. Mississippi*, 498 U.S. 146, 156 (1990). And in *United States v. Obregon*, we found a voluntary waiver of the right to counsel when a defendant initially requested an attorney but then asked the investigating agent "what would happen to him if he told her what she wanted to know." 748 F.2d 1371, 1380–81 (10th Cir. 1984). Thus, even where a defendant invokes his right to counsel, he may waive that right if the waiver is voluntary and constitutes "a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards*, 451 U.S. at 482 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Here, the agents ceased questioning Mr. Willis about K.M's allegations as soon as he invoked his right to counsel. As the district court concluded, "there was no evidence even remotely suggesting coercive actions by law enforcement officers." *See United States v. Lopez*, 437 F.3d 1059, 1064–65 (10th Cir. 2006). Although Agents Willey and Billings asked Mr. Willis for routine background information while waiting for correctional officers to return, such questions do not render Mr. Willis's statements involuntary. *See United States v. Lara-Garcia*, 478 F.3d 1231, 1235 n.3 (10th Cir. 2007) (explaining that questions about identity and other personal information typically do not require *Miranda* warnings).

18

When the correctional officers arrived and the agents began to leave, it was *Mr. Willis* who resumed the conversation by indicating he had changed his mind and wanted to talk. Even then the agents asked Mr. Willis to clarify that he wanted to talk immediately, without first consulting counsel, and the agents again advised Mr. Willis of his Fifth Amendment rights. Under these facts, we agree with the district court that Mr. Willis knowingly and intelligently waived his right to counsel. Accordingly, we affirm the district court's denial of the motion to suppress.

### D.  *Evidence of K.M.'s Sexual Behavior*

The district court also denied Mr. Willis's pretrial motion to admit evidence of K.M.'s sexual behavior. We review this determination for abuse of discretion. *United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008).

In sexual-offense cases, evidence of the victim's sexual behavior is generally inadmissible. Fed. R. Evid. 412(a). But an exception allows "evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." *Id.* R. 412(b)(1)(A). This exception applies "[w]here the prosecution has directly or indirectly asserted that the physical evidence originated with the accused." *Id.* R. 412 advisory committee's note to 1994 amendment.

Mr. Willis asserts the district court erred in excluding evidence that K.M. had sex with her boyfriend at the Bear/Black residence before her encounter with Mr. Willis. Specifically, Mr. Willis moved to introduce the report from K.M.'s sexual-assault examination, which showed that semen in K.M.'s underwear matched DNA

19

samples from both Mr. Willis and K.M.'s boyfriend. According to Mr. Willis, this evidence established K.M.'s motive to lie: she did not want her boyfriend to know she had sex with Mr. Willis, and she did not want Mr. Bear and Ms. Black to know she had been having sex in their house while their children were present.

Mr. Willis's argument fails for several reasons. First, this is not a case where the government sought to prove the charges against Mr. Willis by showing that physical evidence originated exclusively with him. Consequently, Mr. Willis's reliance on our decision in *United States v. Begay*, 937 F.2d 515 (10th Cir. 1991), is misplaced. There, we reversed the defendant's conviction and remanded for a new trial because the district court had excluded evidence of past sexual assaults against the child-victim that was directly relevant to the source of physical evidence. We concluded the evidence should have been admitted to fully explain the victim's physical injuries and to support the defense theory that the injuries were caused by a previous assailant rather than by the defendant, who denied having any sexual contact with the victim. *Id.* at 523, 526. The same rationale does not apply here because Mr. Willis admits he had sex with K.M. Thus, the government had no need to rely on the physical evidence to establish that fact.

This case is similar to *United States v. Nez*, where the defendant "did not dispute the act of intercourse nor his involvement therein." 661 F.2d 1203, 1205 (10th Cir. 1981). And in both this case and *Nez*, "the tendered testimony regarding the victim's past sexual behavior did not encompass behavior with [the defendant]." *Id.* Under such circumstances, we held the district court properly excluded the

20

evidence as irrelevant to the issue of consent. *Id.* at 1205–06. The same is true here. Evidence that K.M. had sex with another individual does not tend to make it more or less probable that K.M. consented to sex with Mr. Willis. Accordingly, that evidence was irrelevant to the only issue at trial. *See* Fed. R. Evid. 401(a). The district court therefore did not exceed its discretion in excluding it.

Moreover, Mr. Willis cannot show prejudice because he was able to present other evidence of K.M.'s potential motive to lie. On cross-examination, K.M. admitted that Mr. Bear and Ms. Black would have been disappointed if they learned she had consensual sex with Mr. Willis. And Ms. Black confirmed K.M.'s assumption, testifying she would be upset if she learned K.M. had engaged in consensual sex with Mr. Willis. Thus, Mr. Willis was able to introduce his defense theory to the jury even without the evidence of K.M.'s prior sexual behavior. Under these circumstances, even if the district court erred in excluding the evidence—and it did not—the error was harmless.

### E.  *Vouching*

Mr. Willis also argues the district court allowed Agent Willey to improperly vouch for K.M.'s credibility. Although we generally review evidentiary rulings for abuse of discretion, the government contends plain-error review is required because Mr. Willis's objections to Agent Willey's testimony were not sufficiently specific. *See United States v. Taylor*, 514 F.3d 1092, 1096 (10th Cir. 2008) ("[W]here a party seeks on appeal to raise an issue not squarely presented to the district court in order

21

to allow it to exercise its judgment in the first instance[,] we traditionally review only for plain error.").

Here, K.M. gave different accounts about whether Mr. Willis penetrated her during the assault: she initially reported to Officer Ortega that Mr. Willis had not penetrated her but later told Agent Willey that he had. When asked at trial about the inconsistency, Agent Willey explained that "sometimes sexual assault victims are just ashamed to report or state what has happened to them. Sometimes they're scared to do it. Sometimes they don't remember." When the government asked whether the tendency to forget or be afraid is more frequent with younger victims, defense counsel objected that Agent Willey was testifying "as an expert witness as to the way children respond differently than adults" during an investigation. The district court sustained the objection.

The government continued:

> Q. [BY THE GOVERNMENT] Did it surprise you that her disclosure was different than it had previously been?
> A. No.
> Q. Did you believe her?
> A. Yes.
> [DEFENSE COUNSEL]: Objection, Your Honor.
> THE COURT: Overruled.
> Q. [BY THE GOVERNMENT Did you believe her?
> A. Yes.

We agree with the government that Mr. Willis did not adequately bring the vouching issue to the district court's attention. Defense counsel first objected on the specific ground that Agent Willey had offered expert opinions about child witnesses and then simply stated "objection," without explanation, when the government asked

22

Agent Willey whether he believed K.M. Nowhere in the record did defense counsel assert that the questions elicited improper vouching. To the contrary, defense counsel asked Agent Willey to reiterate his testimony about K.M.'s credibility. During cross examination, defense counsel asked, "And you have stood before this jury today and vouched for her credibility; isn't that correct?" and Agent Willey responded, "I believe her." Thus, Mr. Willis not only failed to state a specific objection, his own counsel reemphasized that Agent Willey believed K.M.

We therefore review for plain error, which requires Mr. Willis to establish (1) error, (2) that is plain, which (3) affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). Here, we resolve Mr. Willis's vouching argument on the basis that he has not shown that Agent Willey's testimony affected his substantial rights. To satisfy this requirement, a defendant must demonstrate a reasonable probability that the error influenced the outcome of the trial. *United States v. Hinson*, 585 F.3d 1328, 1338 (10th Cir. 2009). Mr. Willis has not made that showing here.

As discussed, there was no dispute that Mr. Willis penetrated K.M.; the only issue was consent. Thus, Agent Willey's testimony that he believed K.M. when she changed her initial statement and reported that penetration had occurred was not relevant to the only issue before the jury. And even considering Agent Willey's testimony more broadly as a comment on K.M.'s overall credibility, Mr. Willis has not argued that there is a reasonable probability the jury would not have convicted

23

him absent the testimony. Thus, even if improper vouching occurred, which is an issue we do not decide, any error was harmless.[6]

### F. *Cumulative Error*

Finally, Mr. Willis claims that even if none of the alleged errors individually warrant reversal, the cumulative effect of the errors deprived him of a fair trial. "A cumulative-error analysis aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (quoting *United States v. Rivera,* 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc)). There must be at least two errors before we may find cumulative error. *See United States v. Thomas*, 749 F.3d 1302, 1307 (10th Cir. 2014). But we have held that the district court did not err in admitting the evidence of prior sexual assaults, Mr. Willis's custodial statements were made after a knowing and voluntary waiver of his right to counsel, and evidence of K.M.'s sexual history was properly excluded. Thus, at most, we have assumed one error for purposes of our analysis: that Agent Willis was permitted to vouch for K.M.'s credibility. Under these circumstances, we reject Mr. Willis's argument because there are not multiple errors to cumulate.

---

[6] Even if Mr. Willis adequately preserved his vouching objection and we applied an abuse-of-discretion standard, we would still review for harmlessness and would therefore reach the same result. *See United States v. Harlow*, 444 F.3d 1255, 1266 (10th Cir. 2006) (treating vouching as a non-constitutional error and therefore examining whether vouching had a substantial influence on the outcome of trial).

## IV.  CONCLUSION

For the above reasons, we AFFIRM the district court in all respects.