**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 24, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                No. 24-7077

BRETT DEWAYNE COLE,

    Defendant - Appellant.

———————————————

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:22-CR-00098-JFH-1)**
———————————————

Blain Myhre of Blaine Myhre LLC, Englewood, Colorado, for Defendant-Appellant.

Lisa C. Williams, Special Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

———————————————

Before **HOLMES**, Chief Judge, **EBEL**, and **CARSON**, Circuit Judges.
———————————————

**EBEL**, Circuit Judge.

———————————————

    In this direct criminal appeal, defendant Brett Dewayne Cole challenges his conviction for aggravated sexual abuse, aggravated abuse, and abusive sexual contact in Indian Country on the grounds that evidence of prior acts of child molestation was wrongly admitted at trial. Specifically, Cole argues both that because the prior acts

occurred when he was a juvenile they are not "crimes" as required by Federal Rule of Evidence 414, and that the evidence's prejudicial effect significantly outweighed its probative value. To the contrary, we conclude that acts of child molestation are still "crimes" for the purposes of Rule 414 when committed by a juvenile, and the district court properly balanced the evidence's probative value and prejudicial effect. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

In May 2019, K.Z., Cole's stepdaughter, reported that Cole had molested her. At the time, K.Z. was aged 10 and in the third grade. K.Z. is a member of the Choctaw tribe.

K.Z. reported that on the evening of May 8, she joined Cole and a friend of Cole's in the "shop" at their home where Cole was working on a four-wheeler vehicle, known as a "Banshee." Over dinner, Cole told K.Z. that if she learned to ride the Banshee, she could have it. Cole's wife went to bed around 10:30 to 11:00 p.m., while Cole went back to the shop. At some point later, Cole came to bed. After a short time lying in bed, Cole went to the kitchen and his wife fell back asleep. Then, Cole went to K.Z.'s bedroom and woke her up. Cole put his fingers in K.Z.'s vagina, telling her that he would give her the Banshee if she allowed him to do so. Cole returned to the bedroom with his wife afterwards, who woke up and noticed that Cole's penis was wet.

On the morning of May 9, school personnel noticed that K.Z. "seemed very distracted and upset." (Aple. Br. at 12.) When asked if she was okay, K.Z. said she

2

was not and needed to talk about something. K.Z. told school personnel that Cole had "stuck his fingers in [her] private parts" the night before. Id. at 14. K.Z. said Cole told her not to tell anyone because he or she would go to jail. When asked if similar incidents had happened before, K.Z. said yes. K.Z. said that Cole had put his finger in her vagina once before. The school then contacted Cole's wife, who came to take K.Z. for an examination.

A sexual assault nurse examiner conducted an examination, and K.Z. told the nurse what had happened. She also told the nurse that there had been two prior occasions of sexual misconduct. On one, Cole put his mouth on K.Z.'s vagina, put his penis in K.Z.'s mouth, and put his penis in K.Z.'s anus. Later, when speaking to a child forensic interviewer, K.Z. described the second prior incident: K.Z. said that Cole had put her hand on his penis and made her move her hand up and down. Cole also pushed K.Z.'s head down, putting his penis in her mouth.

Cole was charged with one count of Aggravated Sexual Abuse in Indian Country, one count of Aggravated Abuse in Indian Country, and one count of Abusive Sexual Contact in Indian Country, under 18 U.S.C. §§ 2241(c), 2244(a)(5), 2246(2)(B-C) & (3), 1151, and 1152, stemming from the three assaults K.Z. described. Cole denied ever inappropriately touching K.Z.

At trial, the government also sought to introduce three different witnesses' testimony of prior uncharged instances of child molestation committed by Cole. First, the government presented the testimony of Cole's half-sister, who is approximately seven years younger than Cole. She testified that when she was

between five and ten—placing Cole between twelve and seventeen—Cole began sexually assaulting her. She said this happened so frequently that "it would take [her] forever to [talk] about everything that has happened." (Aple. Br. at 18.) The three incidents she specifically described included Cole putting his penis in her mouth, Cole kissing her, Cole placing his mouth on her vagina, and Cole putting his fingers inside her vagina. Second, her brother testified that he remembered walking into a shed and seeing them together, with Cole zipping up his pants. Third, Cole's stepcousin who is approximately five years younger than Cole testified that when she was around eight, Cole sexually assaulted her on two occasions. On one occasion, Cole put his hand down her pants and touched her vagina; Cole told her not to tell anyone because nobody would believe her. On another, when she was asleep, Cole started undoing her pants and put his finger in her vagina. At this point, she avoided seeing Cole. Cole denied inappropriately touching his cousin without her consent.

The first trial took place in January 2023. Over Cole's out-of-time objection, testimony regarding the other acts of child molestation was presented. When the jury was unable to reach a verdict after seven hours of deliberation, the court declared a mistrial. The second trial took place in March 2023. Again, the jury heard testimony regarding the other acts evidence. After two hours of deliberation, the jury found Cole guilty on all three counts.

## II. STANDARD OF REVIEW

Cole objected below to the admissibility of this evidence under Rule 414 both because he said his juvenile status at the time of the prior molestations meant they

were not "crimes" as incorporated into Rule 414 and because the evidence's prejudicial effect significantly outweighed its probative value. Preserved objections to decisions to admit evidence are reviewed for abuse of discretion. United States v. Benally, 500 F.3d 1085, 1089 (10th Cir. 2007).

### III. DISCUSSION

Cole argues on appeal that the district court abused its discretion by admitting the evidence of prior acts of child molestation pursuant to Federal Rule of Evidence 414 because he suggests that his juvenile status at the time of the prior molestations made them not "crimes" and, thus, inadmissible under Rule 414. We disagree. Though juvenile delinquency proceedings differ from criminal proceedings, the underlying acts remain criminal. Additionally, Cole argues that the evidence's prejudicial effect significantly outweighed its probative value. Not so. The evidence was highly probative because of its frequency and its similarity to the charged acts, and the risk of prejudice was no greater than any case involving Rule 414 evidence.

### A. Criminal acts committed by juveniles remain "crimes"

When a criminal defendant is accused of child molestation, Federal Rule of Evidence 414 permits the admission of evidence that the defendant "committed any other child molestation." FED. R. EVID. 414(a). Rule 414 then states that "'child molestation' means a crime under federal law or under state law," involving any of a variety of sexually motivated acts. FED. R. EVID. 414(d)(2). Cole argues that prior child molestations committed by a juvenile are not "crimes." Therefore, he suggests that evidence of child molestations committed by the defendant when the defendant was a

5

juvenile cannot come in under Rule 414. Given the law regarding juvenile delinquency, the plain terms of Rule 414, and Congress' intention that courts admit this evidence liberally, we find that evidence of Cole's prior acts of child molestation while he was a minor was admissible under Rule 414.

To support his argument that child molestations committed when the defendant was a minor are not crimes, Cole relies on the definition of "juvenile delinquency" in the Federal Juvenile Justice and Delinquency Prevention Act ("FJDA"). 18 U.S.C. §§ 5031– 42 (2006). Specifically, Cole says that the language stating "'juvenile delinquency' is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult" necessarily means that the act is not a crime if committed by a juvenile. See id. § 5031 (emphasis added). Cole takes this to mean that those who have not reached their eighteenth birthday are incapable of committing "crimes," only "acts of juvenile delinquency."

To the contrary, it is well-established that juveniles are capable of committing crimes. For example, we find it instructive that juveniles can be charged as adults, in which case they are tried in a traditional criminal proceeding rather than a juvenile delinquency proceeding. See, e.g., United States v. Brian N., 900 F.2d 218, 220 (10th Cir. 1990). The FJDA itself instructs when this is appropriate, allowing for criminal proceedings in federal courts when (1) the juvenile court "does not have jurisdiction or refuses to assume jurisdiction" for the misconduct, (2) "the State does not have available programs and services adequate for the needs of juveniles," or

6

(3) the juvenile is charged with a felonious crime of violence.[1]  18 U.S.C. § 5032.

If the FJDA decriminalized otherwise criminal conduct when committed by juveniles, there would be no basis for a criminal conviction in any of these circumstances.

This also follows from the purpose of the FJDA, which is to provide separate proceedings for juveniles outside of the court system and to avoid criminal convictions that would appear on juveniles' records.  Brian N., 900 F.2d at 220.  It is clear, therefore, that Congress intended to alter the consequences of a crime committed by a juvenile, not to reclassify the act itself as non-criminal.  In fact, we discussed in Brian N. the FJDA's applicability to "persons who are juveniles at the time a federal crime is committed."  Id. (emphasis added).  Similarly, in United States v. Mechem, we noted that "Congress recognized that juvenile crimes are 'essentially a State and local problem which must be dealt with by the State and local governments.'"  509 F.2d 1193, 1195 (10th Cir. 1975) (emphasis added) (citing S. Rep. No. 93–1011, 93d Cong., 2d Sess. (1974)).  Criminal actions engaged in by juveniles are still crimes, simply with different proceedings and consequences.

---

[1] Even if Cole prevailed on the proposition that acts of juvenile delinquency covered by the FJDA are not crimes in general, this exception in the FJDA for felonious acts of violence would still defeat Cole's argument here.  Cole's nonconsensual sexual acts would likely fall under this exception for felonious acts of violence.  See e.g., U.S. Sent'g Guidelines Manual §§ 4B1.2a, 2L1.2 app. note 2 (U.S. SENT'G COMM'N 2023) (categorizing forcible sex offenses—sexual acts where consent was not given nor valid—as crimes of violence); 18 U.S.C. § 3156(a)(4) (Bail Reform Act).  Therefore, even under Cole's preferred definition, these prior acts of child molestation were "crimes."

We have previously considered crimes committed by juveniles in an analogous context in United States v. Willis and reached the same conclusion. 826 F.3d 1265 (10th Cir. 2016). In Willis, acts of sexual assault committed by the defendant as a juvenile were presented via Rule 413, id. at 1270, which mirrors the language of Rule 414 by defining "sexual assault" as "a crime under federal law or under state law." FED. R. EVID. 413(d). In Willis, we concluded that evidence of sexual assaults committed as a juvenile was admissible. 826 F.3d at 1274. Cole asserts that, despite the near-identical statutory language and factual background at play in Willis, its holding is irrelevant because the defendant in Willis did not raise his exact argument as to the definition of "crime" drawn from the FJDA; rather, the defendant in Willis argued that his juvenile status at the time rendered the prior sexual assaults irrelevant. But our analysis in Willis was not limited to a Rule 403 balancing. In fact, we recognized the lack of "any authority for the proposition that juvenile misconduct is per se inadmissible under Rule 413." Willis, 826 F.3d at 1274. We went on to say that "the mere fact that Mr. Willis was a minor at the time of his alleged sexual assaults . . . does not render evidence of those events inadmissible, and we cannot say his status as a juvenile conclusively outweighs the other factors showing the probative value of the evidence." Id. We not only answered the balancing question, but also whether crimes committed as a juvenile are admissible as a category in the first place. We answered that question in the affirmative then, and we see no reason to deviate now.

8

Both parties point our attention to In re Sweeney, suggesting it supports each of their positions. 492 F.3d 1189 (10th Cir. 2007). In Sweeney, a debtor in his bankruptcy action sought to discharge a restitution order from a juvenile delinquency proceeding. Id. at 1190. Typically, restitution ordered via criminal proceedings is not dischargeable. Id. at 1191. Holding in that case that the restitution order was dischargeable, however, we said, "an adjudication of juvenile delinquency is not equivalent to a conviction." Id. Cole extrapolates that his acts committed as a juvenile are not criminal and, consequently, inadmissible here. Though Sweeney did highlight the same language from the FJDA that Cole seizes on, id., the crux of its holding was that Sweeney had not been convicted of a crime, which was necessary for the bankruptcy discharge exception. We reiterated that the purpose of juvenile delinquency proceedings is "to avoid the stigma of a prior criminal conviction," id. (quoting Brian N., 900 F.2d at 220), and having thus concluded adjudications of status differ from convictions, we did not need to determine if Sweeney's offense—arson—was still a crime. By contrast, Rule 414 does not require a prior criminal conviction, only an underlying criminal offense. As a result, while undoubtedly related, Sweeney does not change our understanding that criminal acts committed by juveniles are "crimes."

This conclusion is also consistent with "Congress' legislative judgment that [Rule 414] evidence 'normally' should be admitted." United States v. Enjady, 134

9

F.3d 1427, 1433 (10th Cir. 1998).[2]  Congress itself added Rules 413 and 414 to the

Federal Rules of Evidence in 1994.  Pub. L. No. 103–322, Tit. XXXII § 320935;

United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997) (noting Rule 414

"was not developed through the usual Judicial Conference rulemaking process, but by

Congress itself").  Had Congress intended to exclude all evidence of child

molestations committed by juveniles, it would have said so.

Cole's analogous argument with relation to state law is similarly mistaken.

The law in question says that fifteen to seventeen-year-olds charged with rape "shall

be held accountable as youthful offenders."  OKLA. STAT. 10A § 2-5-205(C) (2024).

Reasoning that those under fifteen are not guilty of any crime, Cole says the

government has not sufficiently proven he was at least fifteen at the time of the other

acts.  Again, however, this speaks to the status and punishment of juveniles who

commit the crime of rape; it does nothing to change the substantive criminality of the

underlying offense.  Oklahoma law puts forth three categories of offenders: adults,

youthful offenders, and juveniles.  Id. § 2-5-204(A).  And "[a] child who is arrested

. . . may, depending on the child's age and alleged crime," be placed in each of these

categories.  Id.  Not only does this demonstrate that Oklahoma still considers child

offenses crimes, it also gives discretion to try juveniles as adults for the underlying

---

[2] Because Congress wanted courts rarely to exclude evidence of other child molestations, Rule 414 provides that this evidence "may be considered on any matter to which it is relevant," FED. R. EVID. 414(a), including showing the defendant's propensity to engage in child molestation, Meacham, 115 F.3d at 1492 (10th Cir. 1997), as opposed to typical "other acts" evidence that cannot go to propensity.  See FED. R. EVID. 404(b).

criminal offense.  Id. § 2-5-205(D).  Therefore, we conclude that Oklahoma similarly did not decriminalize offenses committed by juveniles.

Finally, Cole argues that if the language of Rule 414 does not clearly support his position, it is at least sufficiently ambiguous to make the rule of lenity applicable. Even if we were to conclude that Rule 414 is ambiguous, Cole's argument is inapposite.  The rule of lenity is the legal principle that requires courts to interpret vague language in substantive criminal laws and sentencing statutes in favor of criminal defendants.  United States v. Kozminski, 487 U.S. 931, 952 (1988); United States v. Wilson, 10 F.3d 734, 736 (10th Cir. 1993).  The rationale for the rule of lenity is that individuals must be put on notice of what actions constitute a crime and how harshly they can be punished, so that they have a fair opportunity to conform their conduct to the law.  Kozminski, 487 U.S. at 949–50; cf. United States v. Trout, 68 F.3d 1276, 1280 (11th Cir. 1995) (affirming sentence when defendant "clearly knew that such conduct was illegal and punishable by at least five years of imprisonment"); Olivera-Beritan v. Asuncion, 2017 WL 3131829, at *9 (S.D. Cal. July 24, 2017) (unreported) (discussing defendant's practice of "avoiding dealing in other drugs [besides marijuana] due to the long prison sentences").[3]  Rule 414, however, is not a substantive criminal statute nor a sentencing provision.  It is an evidentiary rule.  There is no precedent to support applying the rule of lenity to evidentiary rules, nor should there be.  As opposed to the undoubted importance of an

---

[3] We cite all unpublished decisions only for their persuasive value.  See 10th Cir. R. 32.1(A).

individual knowing substantively whether their conduct is criminal and knowing how harshly they could be punished for that conduct, it is simply too remote to require unambiguous advance notice of what evidence could ultimately be deemed admissible at a subsequent trial, especially for an entirely unrelated crime as is the case here. It is too remote a stretch to assume that Cole would have conformed his conduct and avoided committing the earlier child molestations in order to avoid evidence of such crimes being admitted at a trial several years later for a separate child molestation. Cole asks us to take the rule of lenity one step too far.

We agree with the district court's conclusion that Cole's prior acts of child molestation committed when he was a juvenile were "crimes" as referred to in Rule 414, and thus evidence of such crimes was admissible.

## B. The probative value of the evidence outweighed any unfair prejudice

Once a court has determined that other acts of child molestation meet the baseline criteria for Rule 414, the court must then carry out Rule 403 balancing to determine if the danger of unfair prejudice substantially outweighs the evidence's probative value. See United States v. Perrault, 995 F.3d 748, 765 (10th Cir. 2021). We employ four factors to determine the evidence's probative value and three factors to determine the danger of unfair prejudice. Enjady, 134 F.3d at 1433. Addressing each, we conclude that the district court's balancing was not an abuse of discretion.

### 1. The Enjady factors suggest the other acts evidence was probative

The four factors considered at the probative stage of the analysis are: (1) how clearly the other act has been proven, (2) how probative the evidence is to a material

12

fact, (3) how seriously disputed the material fact to be proven is, and (4) whether less prejudicial evidence is available. Enjady, 134 F.3d at 1433. All four factors weigh in favor of the evidence's probative value.

### a. The other acts were proven by a preponderance of the evidence

Cole argues the other acts were not proven by a preponderance of the evidence because the alleged acts occurred as much as twenty-one years prior to the trial, and they were not reported until 2019 and 2020, respectively. Also, Cole argues that his half-brother provided only weak corroboration of his half-sister's allegations because he did not see any sexual act occur.

Cole's half-sister did, however, disclose her abuse at age eleven. Additionally, though the time since the alleged acts took place may go to the credibility of the witnesses, it does not overcome the witnesses' testimony on a preponderance standard, which only requires that it be more likely than not that the acts took place. Ultimately, "witness credibility is a jury question." United States v. Harjo, 122 F.4th 1240, 1252 (10th Cir. 2024) ("[T]he key to [Rule 414] admission is relevance, not corroboration.").

### b. The other acts were probative of a material fact

Cole argues that the other acts were not probative of a material fact: whether he abused K.Z. This factor itself contains five considerations: (1) the similarity of the other acts and charged acts, (2) the time lapse between the acts, (3) the frequency of the other acts, (4) intervening events, and (5) the need for evidence beyond the

13

defendant's and victim's testimony.  United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998).

Cole argues that significant differences exist between the other acts and charged acts, in that his half-sister alleged Cole put his mouth on her vagina, which K.Z. "didn't say in her trial testimony and [was] something that was not a basis for the three charges," (Aplt. Br. 23), and that Cole was a juvenile at the time of the previous alleged molestations.  These differences are hardly persuasive.  Not only had K.Z. actually told the nurse examiner that Cole did put his mouth on her vagina, but the other aspects of the assaults are essentially identical, and all suggest an affinity to molest girls in his family who are significantly younger than him—and approximately the same age of this victim at the time of her molestation.  Likewise, the difference in his own age does not render the acts themselves any different.

Cole's strongest argument is the lapse in time between these acts, which is between twelve and seventeen years.  In advising that Rule 413 and 414 evidence most often should be admitted as probative, however, Congress noted that "evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses."  Meacham, 115 F.3d at 1492 (quoting FED. R. EVID. 413 Historical Notes).  Therefore, though the time lapse may reduce the probative value of the other acts evidence, it does not negate their probative nature.

Cole argues that the frequency factor cuts against the probative value of the evidence because "only five specific acts" were detailed in the record, which Cole

14

categorizes as "not substantial." (Aplt. Br. 24.) Yet, Cole points to no authority to support his conclusion that five acts of child molestation are "not substantial." One of our sister circuits considered three examples sufficiently frequent. See United States v. LeMay, 260 F.3d 1018, 1029 (9th Cir. 2001). Moreover, Cole's half-sister stated that there were many more than the three instances of molestation of which she provided details—enough that "it would take [] forever" to recount them. Lastly, Cole's argument that the frequency pales in comparison to "daily abuse," (Reply Br. 13), weakens because he did not see his victims daily, but only on specific occasions. Further, his cousin deliberately stopped visiting to avoid additional molestations. The record indicates that when he had the opportunity to assault his young female relatives, Cole often took that opportunity.

As for intervening events, Cole states that his work, marriage, fatherhood, and "full neurological development" all occurred between the prior acts and charged acts. (Aplt. Br. 24.) Similar to the time lapse, these events may reduce the probative value of the other acts, but they do not negate their probative nature.

Finally, Cole argues that there was no need for the other acts evidence because the testimony of K.Z. and the examiners, as well as the physical evidence, was sufficient. We have, however, recognized the importance of corroborating evidence in cases of child molestation. United States v. Charley, 189 F.3d 1251, 1260 (10th Cir. 1999) (en banc). When the credibility of the child-victim has been questioned, as here, "there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense." Id.

15

#### c. The material fact, whether Cole abused K.Z., is seriously disputed

The parties agree that the material fact was seriously disputed: Cole claims he never inappropriately touched K.Z., while the government claims that he did so on multiple occasions. This dispute counsels in favor of admitting the other acts evidence. United States v. Sturm, 673 F.3d 1274, 1286 (10th Cir. 2012).

#### d. There was no less prejudicial evidence for this purpose

The last factor is whether the government can avail itself of less prejudicial evidence. Cole argues the government had less prejudicial evidence at its disposal, which it used, including the testimony of K.Z., the school personnel, and the examiners. The existence of victim testimony alone, however, can hardly mean this factor weighs against admission; if that were the case, there would practically never be good reason to admit Rule 414 evidence in this context. Cf. United States v. Clay, 148 F.4th 1181, 1200 (10th Cir. 2025) (holding district court did not abuse discretion when admitting other acts evidence despite victim testimony, which the government "nearly always has"). Cole's argument would not accord with our understanding that excluding evidence under the Enjady test should be "infrequent[ ], reflecting Congress' legislative judgment that the evidence 'normally' should be admitted." 134 F.3d at 1433.

Additionally, the testimony of K.Z., the school personnel, and the examiners all helped clarify for the jury what had happened to K.Z. and support her version of events. Evidence of other child molestations Cole committed is a different type of evidence, and it is probative for different reasons. The other acts evidence served

16

two distinct purposes: to shed light on Cole's own credibility and his propensity to molest children, purposes uniquely authorized under Rule 414.

As stated above, Rule 414 evidence differs from traditional other acts evidence addressed under Rule 404(b) in that Rule 414 evidence can be used for propensity reasoning. See supra note 2. There is good reason for this unique feature of Rule 414. Congress recognized that it is inherently difficult to prove sexual offenses committed against children because "sex offense prosecutions frequently involves [sic] victim-witnesses who are traumatized and unable to effectively testify." Enjady, 134 F.3d at 1434. Additionally, the offenses "rarely occur in the presence of other witnesses and a child victim's credibility can readily be attacked in the absence of substantial corroboration." Harjo, 122 F.4th at 1249 (internal quotation omitted). Therefore, Congress "determined it would be appropriate to permit the jury to consider a defendant's past conduct as corroborating evidence" in order to give juries a complete picture of the offense and the defendant's background.[4] See id. None of the "less prejudicial" evidence Cole points to helped establish his propensity to molest children, which is the very reason Rule 414 evidence is often necessary and "liberally" admitted. See Meacham, 115 F.3d at 1433. And, as Cole stated, "[t]he case rested largely on K.Z.'s testimony versus Cole's testimony." (Aplt. Br. 28.)

---

[4] The difficulties of child molestation prosecutions also justify the Enjady factors' "specialized version of the standard Rule 403 balancing analysis," Harjo, 122 F.4th at 1249, to enact Congress' instruction "that the evidence 'normally' should be admitted" in these cases. Enjady, 134 F.3d at 1433 (quoting 140 Cong. Rec. H8992 (S. Molinari, Aug. 21, 1994)).

As such, other evidence that would undermine Cole's credibility when denying the alleged molestations was probative and admissible under Rule 414. Charley, 189 F.3d at 1260.

### 2. The Enjady factors suggest little danger of unfair prejudice

The three factors considered in the unfair prejudice analysis are (1) the likelihood of contributing to an improper verdict, (2) whether the other acts will distract from the central issues, and (3) how time consuming it will be to prove the other acts. Enjady, 134 F.3d at 1433.

Cole argues that the danger of the jury improperly convicting him due to these other acts was increased because the other acts involved different victims, and they occurred long before. On these grounds, he seeks to distinguish United States v. Riggs, in which the other acts involved the same victim and were more recent. 2024 WL 2873897, at *8–9 (10th Cir. June 7, 2024) (unreported). But it is not obvious to us, nor has Cole sufficiently established, that these differences increased the likelihood that the jury "would have overlooked [the] testimony about these charged acts and instead punished" Cole for the uncharged acts. See id. at 8. In the absence of any cases compelling the conclusion that the other acts evidence here would lead to an improper verdict, and given the district court's proper instruction to the jury that the other acts evidence could not alone prove guilt, we cannot conclude that the district court abused its discretion by admitting the other acts evidence.

Cole argues that the other acts evidence was very time consuming, taking up 16% of the trial transcript and involving three of the government's twelve witnesses.

18

In Perrault, we recognized that no specific number of Rule 414 witnesses was or was not appropriate, but we pointed to several cases in which three or more witnesses was considered not unduly prejudicial. 995 F.3d at 768. This is particularly true when multiple witnesses are each testifying as to their own molestation. See id. at 769.

Cole also argues that the evidence distracted the jury from the central issues. He suggests that the amount of time spent on the other acts evidence and the fact that he was never charged for the other acts likely distracted the jury. Again, Cole says this risk was heightened by the temporal remoteness of the events and his juvenile status at the time. The district court could have found, however, that the likelihood of distraction was reduced by the remoteness in time and his juvenile status, since the events were less likely to be confused with the charged acts.

Because the evidence was highly probative and did not present significant danger of unfair prejudice, and because the district court provided detailed reasoning for its conclusion, the district court did not abuse its discretion in admitting this evidence. The mere possibility that this evidence would cause the jury to have negative feelings towards Cole does not make it "unfair" prejudice, as this is likely true for all Rule 414 evidence. See Perrault, 995 F.3d at 770 (citing United States v. Mercer, 653 F. App'x 622, 629 (10th Cir. 2016) (unpublished)).

We need not reach the question of harmless error because the district court was correct to admit the evidence. Additionally, to the extent Cole argues that his first trial ending with a mistrial necessarily demonstrates this was a close case and the alleged error was harmful, he is mistaken. See United States v. Newton, 369 F.3d

19

659, 680 (2d Cir. 2004) ("The fact that [defendant's] first trial ended in a hung jury does not alter our harmless error conclusion. A jury may hang for any number of reasons, including the idiosyncratic views of a single juror."). This is particularly true given that both juries heard the challenged evidence. See Barker v. Fleming, 423 F.3d 1085, 1101 (9th Cir. 2005) ("[I]t must be acknowledged that different juries may view the same facts and testimony differently.").

## IV. CONCLUSION

The evidence of Cole's prior acts of child molestation was admissible under Rule 414, and the probative value of this evidence outweighed any danger of unfair prejudice. Therefore, we need not reach the district court's alternative ground for admission via Rule 404(b). We AFFIRM Cole's conviction.