**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee/Cross-
      Appellant,

    v.

HENRY LEE MEACHAM,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 96-4016
    &   96-4042

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CR-32)

---

Edward K. Brass, Salt Lake City, Utah, for Defendant-Appellant/Cross-Appellee.

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, U.S. Department of Justice, Washington, D.C. (Scott M. Matheson, Jr., United States Attorney, and Richard N.W. Lambert, Assistant United States Attorney, District of Utah, with him on the briefs), for Plaintiff-Appellee/Cross-Appellant.

---

Before SEYMOUR, Chief Judge, LOGAN and KELLY, Circuit Judges.

---

LOGAN, Circuit Judge.

---

Defendant Henry Lee Meacham appeals his conviction by a jury of one count of transporting a minor in interstate commerce with the intent that she engage in sexual activity for which defendant could be charged with a crime, in violation of 18 U.S.C. § 2423. On appeal defendant asserts (1) the trial court improperly applied Federal Rules of Evidence 403, 404(b), and 414 and violated his right to a fair trial by admitting evidence that he molested two of his stepdaughters more than thirty years ago; and (2) there was insufficient evidence that he acted with a dominant purpose of engaging in criminal sexual activity when he transported his minor relative in interstate commerce. The government cross-appeals, asserting that the district court applied the wrong sentencing guideline, considered inappropriate factors for departure, and failed to state an adequate rationale for its downward departure.

I

A

We first consider the alleged Federal Rules of Evidence 403, 404(b) and 414 error. The complaining witness in this case, defendant's relative, was twelve years old when she testified at the trial. She testified to two incidents, one occurring when she was seven or eight and the other--on which the charge was based--when she was ten. Both incidents occurred during overnight trips when defendant took her from Utah to California in his work hauling freight. She testified to details which, if believed, clearly amount to a violation of 18 U.S.C. § 2423.

The witness stated that she did not say anything to defendant after the first incident because she was "frightened and confused," and she did not tell her parents about it when she returned to Utah because she was scared. I R. 46-47. She accompanied defendant on the second trip after he asked and gave her belated presents for her tenth birthday. Upon returning home from the second trip, she said she did not tell anyone what had happened because she was afraid of defendant. Later, however, when her younger sister was planning a trip with the defendant, she asked her sister not to go, and then told her father what had happened.

Defendant categorically denied any sexual contact with the alleged victim. He testified that once when she was ill and needed to be comforted he held her but there was no sexual contact. Questioned on cross-examination, defendant denied that he had ever fondled his stepdaughters when they were under the age of fourteen. For rebuttal, the government called two of defendant's stepdaughters; they both testified that defendant had molested them when they were young girls more than thirty years before.

In considering defendant's argument that the court improperly admitted the step-daughters' testimony, there is some confusion whether the court admitted it under Fed. R. Evid. 404(b) or 414, and, indeed, concerning which rule should apply. Defendant was indicted on February 23, 1995 and tried in September 1995. Rule 414 became effective on July 9, 1995. In a case decided after this trial, United States v. Roberts, 88 F.3d 872, 878 (10th Cir. 1996), we held that new Fed. R. Evid. 413 (a companion to Rule 414)

applied to proceedings commenced on or after the July 9, 1995 effective date and that "proceedings" was defined as the indictment or information. Thus, under Roberts, Rule 414 would not apply to this case. In September 1996, however, Congress amended the effective date provision of Rule 414 and specifically stated that it would apply to "proceedings commenced on or after the effective date of such amendments, including all trials commenced on or after the effective date of such amendments." Omnibus Appropriations Act of 1997, Pub. L. No. 104-208, 110 Stat. 3009-25 (emphasis added). We have held that a change in the law after a trial was held will not be applied retroactively absent a clear expression of congressional intent. De Vargas v. Mason & Hanger-Silos Mason Co., 911 F.2d 1377, 1388 (10th Cir. 1990), cert. denied, 498 U.S. 1074 (1991). The Roberts interpretation was ten months after the instant trial and the congressional amendment which would seem to overrule our interpretation was less than three months later. Arguably, applying Rule 414 as Congress later mandated did not upset settled law in effect in September 1995. We here analyze the court's ruling under both Rules 404(b) and 414; and we find no reversible error under either alternative.

B

Fed. R. Evid. 414 provides in pertinent part:

   **(a)** In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

- 4 -

This rule, like Rule 413, "provides a specific admissibility standard in sexual assault cases, replacing Fed. R. Evid. 404(b)'s general criteria." Roberts, 88 F.3d at 876. It "supersede[s] in sex offenses the restrictive aspects" of Rule 404(b). Fed. R. Evid. 413 Historical Notes (quoting 140 Cong. Rec. H8991-92 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)).

The language of Rule 414 does not address the question of staleness. The rule, however, was not developed through the usual Judicial Conference rulemaking process, but by Congress itself. The historical notes to the rules and congressional history indicate there is no time limit beyond which prior sex offenses by a defendant are inadmissible.

> No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses. See, e.g., United States v. Hadley, 918 F.2d 848, 850-51 (9th Cir. 1990), cert. dismissed, 113 S. Ct. 486 (1992) (evidence of offenses occurring up to 15 years earlier admitted); State v. Plymate, 345 N.W.2d 327 (Neb. 1984) (evidence of defendant's commission of other child molestations more than 20 years earlier admitted).
>
> . . . . To implement the legislative intent, the courts must liberally construe these rules to provide the basis for a fully informed decision of sexual assault and child molestation cases, including assessment of the defendant's propensities and questions of probability in light of the defendant's past conduct.

Id. Rule 403 balancing is still applicable, see id., but clearly under Rule 414 the courts are to "liberally" admit evidence of prior uncharged sex offenses.

In the instant case the principal relevance of the prior act testimony is to show defendant's intent, at the time he induced this minor relative to accompany him on an interstate trip, to sexually molest her. The district court, in ruling on the admissibility of this evidence, focused on the intent and weighed the prejudicial effect pursuant to Rule 403, although it also was paying attention to the strictures of Rule 404(b).[1]

When the prosecutor informed the court that he was going to cross-examine defendant about alleged incidents of prior molestation, the following colloquy took place out of the jury's presence:

> The court: Why should you be able to go into something 25 years old?
>
> [The government:] Judge, because--and the congressional record makes this clear, that Congress recognizes that people that have an aberrant sexual behavior, such as the defendant does, you don't get over that.
>
> The court: Well, you're talking about not 404(b) then. You're talking about 414, are you?

---

[1] Before trial defense counsel filed a motion in limine requesting that the district court exclude testimony that more than thirty years before defendant had sexually molested two of his stepdaughters. Defense counsel argued that the allegations were too remote in time for defendant to defend against them, the alleged incidents were dissimilar to the allegations in the instant case, they did not involve interstate transportation, and the prejudicial impact of that evidence would outweigh the probative value. The district court either denied the motion in limine or deferred it for a later ruling. It made a specific ruling just before the stepdaughters testified, as follows: "The court finds that the relevance of this testimony which has been proffered outweighs any prejudice, and that the evidence has a bearing on matters which are relevant to this case, such as whether a dominant or compelling purpose of the travel was for the purpose of illegal sexual activity." II R. 131.

[The government:]  Well, really both.  Because it's--it is a prior act offered to show plan and preparation and also to show his intent.  And now he's saying, "I never intended anything.  If I was together with her in the bed, it was just purely innocent."  And I think what he did 25 years ago--he was a mature man then--is clearly relevant to what he did with this little girl over a two year period of time.

The court:  Okay.

[The government:]  And if I could just make one more comment.

The court:  Go ahead.

[The government:]  Judge, with things like sexual orientation towards children, a sexual interest in children, that doesn't change unless you get some intervention.  And I don't think there's any indication that the defendant ever had any intervention after his first incidents,[2] and that's why he's carrying it out now, or two years ago.  And I think the jury needs to understand that to really put into perspective what they've heard from the witness stand.

. . . .

[Defense counsel:]  There's no testimony to that effect with respect to the last hypothetical he's just put forth to you.  There's no expert that's been called to say that that's in fact the case.  He really isn't talking to you about plan or motive or identity.

[Defendant's] testimony was carefully tailored to this young woman, this young woman alone.  He didn't say, "I haven't ever done anything in the past."  He didn't say, "I'm the salt of the earth.  I would never do anything like this."  None of those kind of remarks were made.

---

[2]  This may be incorrect.  The presentence report at ¶ 35 indicates that defendant's wife's church provided counseling for defendant in connection with an earlier incident involving the stepdaughters.  No evidence of intervention or counseling was introduced at trial, however.

What we're talking about isn't 25 years ago. The closest incident in their reports--the most recent incident is 1966. We're talking 29 years ago for maybe the most recent even talked about something that might colorably come close to anything we've talked about in this case. . . .

There's nothing in 414 that indicates that somehow 403 doesn't apply to it and doesn't override it. This is so long ago, and it's so unlike the events that we've been talking about that it ought to be excluded for both those reasons. There's absolutely no way that I can go back and now have a minitrial and dredge up witnesses to say what the ladies are saying isn't the case, for something that happened before maybe many of these jurors were even born.

II R. 112-15. The district court then admitted the challenged evidence, stating that

I'm cognizant of the congressional discussion about the new law. It says in line with the judgment that evidence admissible pursuant to the proposed rules is typically relevant and probative, that its probative value is normally not outweighed by any risk of prejudice or other adverse effect. That's a judicial decision to be made. But they have made that as a legislative generalization. They say in line with that judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence. Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions. No time limit is imposed on the uncharged offenses for which evidence may be submitted.

As a practical matter, evidence of other sex offenses by the defendant is often probative, properly admitted, notwithstanding very substantial lapses of time. Two cases are cited from the Ninth Circuit, other cases, admitting evidence of more than 20 years, 15 years.[3]

I'm going to permit [the government] to ask this defendant, because I think it has a bearing on the matter which is relevant, and that is what his intention was in this particular case; ask him if he's had sexual contact previously with his--with his [step]daughters. And if he says no, that's as

_____

[3] It is clear the district court was citing the Historical Notes to Fed. R. Evid. 413 and 414.

far as you can go with him, but you will have the right to go into rebuttal. All right.

II R. 115-16.

Before the first of the two stepdaughters testified the district court gave the jury the following limiting instruction:

> Ladies and gentlemen, this is being permitted to go into for a very limited purpose. You can't consider prior acts as evidence that the acts charged in this indictment occurred, and you can't consider those prior acts, if any, to prove a character trait of the defendant. But you can consider it as it may bear upon the intention, preparation, the plan or absence of mistake, those limited reasons, you may hear evidence, not as direct evidence that this happened, but as evidence of a plan or intention, and whether or not one of the dominant or compelling purposes of the travel in this case was for illegal sexual activity. That's how you may consider it.

II R. 137-38. Before the second stepdaughter's testimony the district judge stated:

"Understand, ladies and gentlemen, that the same limiting instructions I simply mentioned to you a few moments ago is pertinent to this testimony also. The testimony has to do with plan, intent, arrangements, things of that nature. Go ahead." Id. at 148.

When the case was presented to the jury the court gave jury instruction No. 22, which followed Rule 404(b), and provided:

> This evidence may be considered by you only as it may be relevant to the defendant's intention, plan preparation, or absence of mistake as bearing upon the offense contained in the Indictment. You may also consider this evidence for its bearing, if any, on the matter of whether or not the defendant acted with a dominant or compelling purpose to transport [the victim] for illegal sexual activity as charged in the Indictment.

Jury Instruction No. 22.[4]

C

It appears the district court thought it should apply Rule 404(b), informed by the legislative history of Rules 413 and 414 in performing the required Rule 403 balancing. That is the sense of its colloquy and its limiting instructions. We therefore analyze the admission of this evidence from the perspective of Rule 404(b). In Huddleston v. United States, 485 U.S. 681 (1988), the Supreme Court set out four procedural safeguards that apply to admissions under Rule 404(b).

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Jefferson, 925 F.2d 1242, 1258 (10th Cir.), cert. denied, 502 U.S. 884 (1991) (citing Huddleston, 485 U.S. at 691-92).

The district court properly identified the Rule 404(b) purposes of plan, preparation, lack of mistake, and intent. It stated the purposes a little too broadly, as lack of mistake is not an issue in the instant case. But intent is an issue; and the evidence might be

---

[4] The defendant's brief quoted and included in the appendix an Instruction No. 22 purportedly used at trial. In studying the record, we learned that this was not the Instruction No. 22 actually used at trial. This oversight misled us for a time and, to say the least, we do not appreciate being misled.

somewhat probative of plan or preparation, in light of the need to show defendant's intent to transport the victim for illegal sexual activity. On Rule 403 balancing, as we read the record, the district court weighed the probative value versus the prejudice of the evidence, and was informed in doing so by the legislative history of Rules 413 and 414. This conclusion is supported by the fact that the district court did not instruct the jury that it could consider the evidence for propensity to molest, which would have been allowed under Rule 414. The court gave Rule 404(b) limiting instructions both when the evidence was introduced and at the end of the trial.

Defendant asserts that as a matter of law the lapse in time between the prior alleged molestations and the one in the instant case precluded the prior bad acts from admission under Rule 404(b). He relies upon United States v. Fawbush, 900 F.2d 150 (8th Cir. 1990), in which the Eighth Circuit held that the defendant's daughters' testimony that he sexually abused them eight years earlier was improperly admitted under Rule 404(b). The Fawbush court concluded that the evidence, which included one daughter's testimony that the defendant impregnated her, was too remote and "so inflammatory" that its prejudicial effect outweighed any probative value. The Eighth Circuit stated that the prior acts were relevant "to his motive, intent, plan, or knowledge with respect to the acts for which he was tried" only to show propensity to commit such acts. 900 F.2d at 151.

Of course, our case is different because the government had to prove intent to travel interstate to sexually abuse the minor relative and the stepdaughters' testimony

suggests a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority. Similarity of prior acts to the charged offense may outweigh concerns of remoteness in time. Hadley, 918 F.2d at 851. We cannot say that the district court abused its discretion in admitting the prior acts evidence under Rule 404(b).

Although it appears that the district court admitted the evidence under Rule 404(b), we recognize that it relied upon the congressional findings set forth in the legislative history of Rules 413 and 414 in its Rule 403 balancing and felt that it could not have admitted the evidence without Rule 414 being in place. To the extent that the district court admitted the evidence under Rule 414, we likewise cannot say it abused its discretion. Under Rule 414 the prior acts evidence must still be relevant and followed by a Rule 403 balancing. Both conditions were met and, under the circumstances of this case, the prior acts evidence was not so prejudicial as to violate the defendant's constitutional right to a fair trial.

## II

### A

Defendant asserts that the government presented insufficient evidence that he intended to transport the minor relative across interstate lines to engage in sexual activity. We view the evidence in the light most favorable to the government and determine if any rational trier of fact could find the defendant guilty of the crime charged beyond a

reasonable doubt. We make all reasonable inferences and resolve credibility issues in favor of the verdict. United States v. Hardwell, 80 F.3d 1471, 1482 (10th Cir. 1996).

Defendant argues that he made the trips primarily to drive his truck for business and that sexual abuse of this minor was not a dominant purpose. But illicit sexual activity need not be the only purpose for interstate travel; it is sufficient if it was one of defendant's "efficient and compelling purposes." See United States v. Dunn, 190 F.2d 496, 497 (10th Cir. 1951); see also United States v. Campbell, 49 F.3d 1079 (5th Cir.) (the sole or primary reason for interstate travel need not be illicit sexual activity as long as it is one of the motivating purposes), cert. denied, 116 S. Ct. 201 (1995); United States v. Kinslow, 860 F.2d 963 (9th Cir. 1988), cert. denied, 493 U.S. 829 (1989) (although primary purpose for taking hostage across state lines was to ensure his own safety, defendant also had immoral activity as a dominant purpose), overruled on other grounds, United States v. Brackeen, 969 F.2d 827 (9th Cir. 1992) (en banc); United States v. Ellis, 935 F.2d 385 (1st Cir.), cert. denied, 502 U.S. 869 (1991) (jury could consider that defendant's personal motive for bringing minor on interstate family vacations and business trips was to have her available for sexual abuse even though there were other purposes for the trips).

The trip forming the basis of the count on which defendant was convicted occurred in 1993 shortly after the victim's tenth birthday. At trial the government produced the following evidence: that defendant had sexually molested this girl two years before on

another interstate trip; that just before the 1993 trip he took her from class at school, gave her a camera, a belated birthday card, and five dollars and asked her to accompany him on another trip; that after the molestation he told her to "beware" if she considered telling other people about what happened, I R. 68-69, II R. 41-42; and that he gave her additional presents shortly after their return to Utah. The evidence of the gifts could be viewed as an expression of innocent love of an older relative for a young child. But in context with the other evidence that would be a question for the jury. The evidence was sufficient to permit the jury to find that one of defendant's dominant purposes for traveling interstate with the minor was to sexually molest her.

B

Defendant also argues that under United States v. Lopez, 115 S. Ct. 1624 (1995), the government had to show that the criminal conduct for which he was convicted had a substantial impact on interstate commerce. In Lopez, the Supreme Court held that a federal statute prohibiting possession of guns in school zones did not regulate "an activity that substantially affects interstate commerce," and therefore the law was unconstitutional. Id. at 1630. In the instant case, however, the transportation of the minor in interstate commerce supplied the required interstate nexus, an issue settled long ago in Hoke v. United States, 227 U.S. 308 (1913) (Mann Act was a constitutional exercise of Congress' Interstate Commerce Clause powers). Lopez did not alter Hoke. See United States v. Sirois, 87 F.3d 34, 40 (2d Cir.) (18 U.S.C. § 2251, which prohibits interstate

- 14 -

transportation of child pornography, did not require a commercial benefit to come within the scope of congressional regulation), cert. denied, 117 S. Ct. 328 (1996).

III

The government cross-appeals, asserting that in sentencing defendant the district court relied on the wrong sentencing guideline, considered inappropriate factors for departure, and failed to articulate an adequate rationale for either the downward departure or the extent of the departure. The district court departed downward from the forty-one to fifty-one months sentencing range calculated by the presentence report, to a range of eight to fourteen months. The court then sentenced defendant to an eight-month split sentence, with four months in a halfway house and four months in-home detention. We review a district court's decision to depart downward from the guideline range for an abuse of discretion. Koon v. United States, 116 S. Ct. 2035, 2046-47 (1996). We review de novo the legal question whether a particular factor could ever constitute a basis for departure. Id. at 2047-48.

A

We first examine the guideline range used by the district court. The presentence report calculated the applicable guideline range as level 22, applying USSG § 2G1.2(a), (b)(2) & (b)(4). It should have applied the USSG § 2G1.2(c)(3) cross-reference directing the court to apply USSG § 2A3.4 if the offense did not have as its purpose "producing a

visual depiction," 2G1.2(c)(1), did not involve attempted or completed "criminal sexual abuse," 2G1.2(c)(2), and did not include transportation for prostitution, 2G1.2(c)(3).[5]

At the time of defendant's offense federal law defined "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2245(3) (1986). The evidence at trial established that defendant's conduct with the child constituted "sexual contact" under federal law and that it came within the scope of USSG § 2A3.4.[6]

---

[5] "[A]s statutes referenced to § 2G1.2 may be used as 'jurisdictional' statutes in some cases to prosecute conduct that is more appropriately covered under other guidelines (§§ 2A3.1, 2A3.2, and 2A3.4), this amendment inserts cross references as § 2G1.2(c)(2) and (3) to provide consistent offense levels in such cases." USSG App. C, Amendment 400 (effective November 1, 1991).

[6] Defendant was convicted of violating 18 U.S.C. § 2423 (1988), which punishes "[w]hoever knowingly transports any individual under the age of 18 years in interstate . . . commerce . . . with intent that such individual engage . . . in any sexual activity for which any person can be charged with a criminal offense." The indictment specified the criminal sexual activity for which defendant could "be charged with a criminal offense" occurred during the trip from Utah to California. The evidence showed that defendant sexually molested the victim in California. Thus the jury was charged that the government had to prove that defendant transported the victim interstate with an intent to engage in sexual activity in violation of California Penal Code § 288(a) which includes the commission of "any lewd or lascivious act . . . upon or with the body . . . of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Jury Instruction No. 18, Supp. App. 42.

Under USSG § 2A3.4 defendant's base offense level is ten, id. § 2A3.4(a)(3), enhanced to level sixteen because the victim was less than twelve years old, id. § 2A3.4(b)(1), and enhanced another two levels because the victim was in the custody, care, or supervisory control of the defendant, id. § 2A3.4(b)(3). Thus defendant's total offense level is eighteen, not twenty-two. Using the same criminal history category, the resulting sentencing range would be twenty-seven to thirty-three months, id. Ch. 5 Pt. A, rather than the forty-one to fifty-one months that the district court utilized.

B

Under the sentencing guidelines the district court "must impose on a defendant a sentence falling within the range of the applicable Guideline, if the case is an ordinary one." Koon, 116 S. Ct. at 2044. In order to depart "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." Id. at 2046. Congress has permitted a district court to depart from a guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," 18 U.S.C. § 3553(b); see also Koon, 116 S. Ct. at 2044, or if the guidelines themselves specifically provide for departure. See, e.g., 18 U.S.C. § 3553(e) and USSG § 5K1.1.

The government argues that the district court erred because it was not considering the heartland of the correct guideline in departing downward on factors "outside the

heartland." The government asserts that for this reason alone we should vacate the sentence and remand for resentencing. We agree. We must then also address the government's assertion that in departing downward the district court relied upon improper factors.

C

The district court relied on several factors in departing downward. It first stated that there was "no significant physical harm or psychological harm" to the victim. Sentencing transcript at 15, Supp. App. 4-23. We are not sure what the district court meant by its finding that the victim suffered no "significant" psychological harm. She required seventeen counseling sessions for her and/or her family, II R. 51, and she may require additional therapy. See Presentence Report ¶ 13. The psychological harm suffered by the victim would appear to be typical of offenses involving molestation of children under twelve by their relatives. Further, a lack of physical harm is clearly within the heartland. Penetration by any means would have been a sexual act that would constitute criminal sexual abuse and would be covered by USSG § 2A3.1, not § 2A3.4. See 18 U.S.C. § 2241(c). Thus a typical case under USSG § 2A3.4 involves sexual touching without any significant physical injury, as here. See 18 U.S.C. § 2245(2) and (3) (1988).

The district court also relied for its departure on its statement that the victim showed "utter forgiveness." Forgiveness by a twelve-year-old victim carries no legal consequence.

The district court next stated in departing that "this case was prosecuted only after a delay of almost two years," Sentencing transcript 15; Supp. App. 4-23, but this statement is not supported by the record. The offense occurred in late November 1993, and the victim came forward with her allegations in March 1994. Defendant was indicted on February 23, 1995, and the jury verdict was rendered on September 29, 1995. Only four months elapsed between the offense and the report, and a total of fifteen months elapsed between the offense and the indictment. The trial was commenced within the Speedy Trial Act requirements.

Discovery of child molestation by relatives often involves some delay and difficulties in bringing a successful prosecution. Although defendant suggests the government delayed to gain application of new Fed. R. Evid. 414, nothing in the record suggests that the preparation to prosecute the case was an aberration justifying a downward departure. Cf. United States v. Saldana, 109 F.3d 100 (1st Cir. 1997) (suggesting extreme delay in prosecution could be basis for departure, although "ordinary accidents of acceleration or delay are part of the fabric of criminal proceedings").

Finally, in departing downward the district court referred to weak evidence regarding defendant's intent and stated that "the interstate aspect of the case is weakened

by the age of the testimony, that is the dates of the testimony having to do with incidents that occurred many years ago." Sentencing transcript 15-16; Supp. App. 4-23. Defendant's intent was an element of the offense determined by the jury; although the district court could override the jury's credibility assessment on a motion for acquittal, the district court cannot depart downward based on its doubts about witnesses' credibility. See United States v. Haut, 107 F.3d 213, 219-20 (3d Cir. 1997).

IV

On remand the district court must resentence based on the appropriate sentencing guideline. If the district court decides to depart downward, it "must give a sufficient explanation for the departure, which must include the following: 'First, a district court must explain why the Guidelines sentence is inadequate. Second, the court must identify a sufficient factual basis for departure. Third, the court must explain why that specific degree of departure is reasonable.'" United States v. O'Dell, 965 F.2d 937, 938 (10th Cir. 1992) (quoting Jackson, 921 F.2d 985, 989) (10th Cir. 1990)).

The conviction is AFFIRMED, but the case is REMANDED with the direction that the district court vacate the sentence and resentence defendant consistently with this opinion.