**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAEDERICK LACY,

Defendant - Appellant.

No. 17-3119

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 6:16–CR–10009–EFM–1)**

---

William D. Lunn, Tulsa, Oklahoma, for Defendant-Appellant.

Jason W. Hart, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Defendant Daederick Lacy was charged with three felony counts stemming from his prostitution of teenage girls. In Count 1, which related to a sixteen-year-old girl, he was charged with sex-trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). In Count 2, which related to a nineteen-year-old girl, he was charged with sex-

trafficking accomplished by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1) and (b)(1). Finally, in Count 3, which related to a seventeen-year-old girl, he was charged with transporting a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). The jury convicted him on all three counts, and he was sentenced to a total of 293 months of imprisonment.

On appeal, Defendant challenges his conviction on each count. He argues that Count 1 should be reversed because (1) the district court did not provide the jury with a technical definition of "sex act" to guide its verdict and (2) there is insufficient evidence to support the jury's finding that his sixteen-year-old victim engaged in sex acts with her clients. He argues that Count 2 should be reversed because the district court allowed two law enforcement officers to testify about what the victim told them the day after she committed an act of prostitution arranged by Defendant. Finally, he argues that Count 3 should be reversed for insufficiency of the evidence. We address each of these arguments in turn, discussing the facts relevant to the resolution of each argument as needed.

We begin with Defendant's argument that his conviction on Count 1 should be reversed because the jury instructions did not include a technical definition of "sex act." Because Defendant did not raise this argument below, we review it only for plain error. *See United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012). "Under plain error review, we will notice the alleged error and grant the appellant relief only when four requirements are met: (1) an error occurred; (2) the error is plain or obvious; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or

public reputation of judicial proceedings." *Id.* "In other words, the plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15 (1985) (internal quotation marks omitted).

Section 1591 applies in part to anyone who knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" a minor who "will be caused to engage in a commercial sex act," which the statute defines as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. §§ 1591(a)(1), (a)(2), (e)(3). The statute does not further define "sex act," nor does it refer to any other statutory definition for this phrase. Defendant contends, however, that the term "sex act" in § 1591 must be defined by reference to a separate statute, 18 U.S.C. § 2246, which provides a definition for "sexual act" as that phrase is used in 18 U.S.C. §2241–§2248.

"For purposes of plain error review, the term 'plain' requires that the error be clear or obvious under current law." *Pablo*, 696 F.3d at 1290. "Generally speaking, we do not deem an error to be obvious and clear unless it is contrary to current well-settled law—that is, to the current law of the Supreme Court or the Tenth Circuit." *United States v. Wardell*, 591 F.3d 1279, 1298 (10th Cir. 2009) (internal quotation marks omitted). Defendant has not cited to a single case from any jurisdiction in which a court held that the jury in a § 1591 case must be provided with the definition of "sex act" from § 2246. Indeed, Defendant has not cited to a single § 1591 case in which a court held that the jury

must be provided with a technical definition of this term from any source. Thus, even assuming that the lack of a technical definition was erroneous, any such error was far from clear or obvious under current law. Defendant has therefore failed to meet his burden of showing plain error on this argument.

We turn then to Defendant's argument that his conviction on Count 1 must be reversed for insufficiency of the evidence. "We review the record de novo in sufficiency-of-the-evidence challenges to criminal jury verdicts, asking if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Cornelius*, 696 F.3d 1307, 1316 (10th Cir. 2012) (internal quotation marks omitted). In so doing, "[w]e consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Id.* (internal quotation marks and brackets omitted). "We will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

Defendant challenges only one aspect of the sufficiency of the evidence on Count 1, arguing that there is insufficient evidence to show that he caused his sixteen-year-old victim to engage in "sex acts" because her testimony about engaging in sex acts with clients is "conclusory." (Appellant's Opening Br. at 29–30.)[1] This argument is based in part on Defendant's contention that "sex acts" under § 1591 must be defined by reference

---

[1] All citations to Appellant's briefs, the Supplemental Appendix, and Volume III of the record are to the redacted versions of the same.

to § 2246: he argues that the only types of "sex acts" that can sustain a conviction under § 1591 are the types of acts defined in § 2246, i.e., oral sex and penile or digital penetration of the anus or genitalia. The cases Defendant cites to support his underlying definitional argument are all inapposite. However, even accepting Defendant's definitional argument for purposes of this appeal, we are persuaded that a reasonable jury could certainly have found beyond a reasonable doubt that Defendant caused his sixteen-year-old victim to participate in such acts. The victim testified that she engaged in numerous sex acts with clients, arranged by Defendant through online advertising, for which Defendant was paid. Particularly in light of the evidence that the victim asked Defendant to bring her condoms and had conversations about sexual matters with Defendant and his other sex-trafficking victims, we are not persuaded that it was unreasonable for the jury to infer that the "sex acts" she testified about were indeed sex acts and not, as Defendant argues, something along the lines of a non-erotic massage.

Moreover, even if we were to accept Defendant's argument that the victim's testimony that she engaged in sex acts was insufficient to prove she did engage in sex acts, we would still affirm the conviction based on the substantial additional evidence of the types of acts that occurred. To take just one example, Defendant told the victim he would not accept the excuse that she was on her period, since she could still use her mouth to make money. A law enforcement officer who works with exploited children testified that this was a reference to oral sex. Defendant argues this could have instead been a reference to kissing. However, while Defendant was free to make this argument to

the jury, the jury was free to accept the law enforcement officer's explanation instead, and even Defendant concedes that oral sex would qualify as a "sex act" under § 1591. Based on all of the evidence presented at the trial, a reasonable jury could easily have found that Defendant caused his sixteen-year-old victim to engage in sex acts for pay, even under Defendant's preferred definition of the term. We therefore affirm Defendant's conviction on Count 1.

As for Count 2, Defendant raises only one challenge to his conviction on this count. Specifically, he argues that the district court erred in admitting hearsay testimony from two officers about what his nineteen-year-old victim told them the day after she committed an act of prostitution for Defendant. We review this argument only for plain error because Defendant did not raise a hearsay objection to the officers' testimony below. *See United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012).

We hold that this argument fails on the third prong of plain error because Defendant has not shown that any arguable error in the admission of this testimony was prejudicial. To satisfy this prong of the plain error test, "the appellant must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (internal quotation marks omitted). We conclude that Defendant has not satisfied this burden, and we therefore affirm on this ground without reaching the question of whether the admission of the officers' testimony constituted an error that was obvious under well-settled law.

-6-

In this count, Defendant was convicted of sex-trafficking his nineteen-year-old victim by "means of force, threats of force, fraud, coercion . . . , or any combination of such means." 18 U.S.C. § 1591(a)(2). Defendant does not dispute that he arranged for the nineteen-year-old to commit a sex act with a client, nor does he dispute that this sex act actually occurred. The only disputed factual question is whether Defendant used "means of force, threats of force, fraud, coercion . . . , or any combination" thereof, *id.*, to cause his victim to do so. On this disputed question, the jury heard extensive testimony from the victim about her reasons for engaging in the sex act. During this time period, she was homeless and living out of her car, and all of her most important belongings were stored in the trunk of her car. When she went to Defendant's dormitory to discuss what she thought was a modeling or recruiting opportunity, he took her phone and car keys from her. She told him that she needed her car because she was homeless, but he would not give her keys back to her. Instead, he took her to a hotel where she "had to go meet with" a client and, after having sex with the client, she had to give the client's money to Defendant. (R. Vol. III at 364.) She did not want to have sex with the client, but she felt like she had to, due to the vulnerability of her circumstances. Defendant's conduct, particularly his seizure of her car and her phone, made her feel like a child who had no say and no control over what happened to her. She testified that she did not ask the hotel clerk or anyone else for help because she was concerned about her safety, and she was also afraid of endangering the sixteen-year-old victim from Count 1, who was waiting in the car with Defendant while the nineteen-year old met with her client at the hotel. The

-7-

victim also testified that the morning after this experience, Defendant tried to make her sell her car. This testimony was verified by the car salesman who met with the victim and Defendant at the car lot. The salesman testified that Defendant kept taking over the conversation and shutting the victim down when she tried to say anything. The victim testified that she felt the same lack of control at the car lot as she had felt the previous night with the act of prostitution.

Defendant argues that the officers' hearsay testimony about the victim's contemporaneous statements to them was unfairly prejudicial because it was inconsistent with, and stronger than, the victim's trial testimony. This argument rests primarily on the officers' testimony that the victim said Defendant had forced her to engage in an act of oral sex with him after she had intercourse with the client. At trial, the victim testified that Defendant kept insisting that she engage in a sexual act with him, despite her unwillingness. In her trial testimony, she said several times that she simply could not remember whether she committed a sexual act with Defendant, but at one point she answered "no" when asked if Defendant had forced her to do anything with him. The victim also explained that "when people go through bad things, they like to forget the bad things." (*Id.* at 399.) Defendant points out that the officers' hearsay testimony was much less equivocal than this. The only other allegedly prejudicial aspect to the officers' testimony which Defendant raises in his opening brief is one officer's testimony that the victim said the client took her condom away and Defendant refused to give her a new

condom, which is arguably inconsistent with the victim's trial testimony that the client provided and used his own condom.[2]

We are not persuaded that there is a reasonable probability that, were it not for the officers' hearsay testimony, the jury would not have convicted Defendant. The sex act that forms the basis for Defendant's conviction is the victim's sex act with the client, not the sex act with Defendant that allegedly came later. Whatever the inconsistency in the victim's statements about whether the later act even occurred, the victim's testimony about the sex act with the client was consistent and clear—she did not want to have sex with the client, but she felt coerced into doing so because of the vulnerable position she was in as a homeless woman whose car and belongings were now in the possession and

---

[2] In his reply brief, Defendant contends that the government's closing argument relied on and emphasized a few other points that the victim herself had "never testified" to, such as her fear of "'potentially being raped'" by Defendant when she was refusing to have sex with him in her car. (Appellant's Reply Br. at 16 (quoting R. Vol. III at 668).) However, most of the cited statements, including the prosecutor's statement about the victim's fear of being raped, were in fact based on the victim's own testimony. (*See, e.g.*, *id.* at 388 (victim testifying that she feared she "could have, like, been raped" when Defendant was insisting on engaging in a sex act with her).) The most potentially prejudicial hearsay testimony Defendant points to in his reply brief is the officer's testimony that Defendant allegedly told the victim, while pressuring her to have sex with him following her act of prostitution with the client, that it was too late to turn back now. Even assuming that this argument was properly raised by the reply brief, we are not persuaded that this hearsay testimony—about an encounter that followed the act of prostitution charged in Count 2—may have changed the outcome of the trial.

control of a man[3] who also had a sixteen-year-old victim in his clutches. Moreover, the victim's testimony that she felt like Defendant had taken control over her car and her life was corroborated by the car salesman's non-hearsay testimony about his observations of Defendant's interactions with the victim the next morning. Considering "the context, timing and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence," and in light of the strength and "amount of evidence supporting [Defendant's] convictions," *United States v. Magleby*, 241 F.3d 1306, 1317 (10th Cir. 2001), we are not persuaded that the jury would likely have acquitted Defendant were it not for the officers' hearsay testimony. Rather, viewing Defendant's claim of error "against the entire record," *Young*, 470 U.S. at 16, Defendant has not shown a reasonable probability that the alleged error affected the outcome of the trial. We therefore affirm Defendant's conviction on this count based on the third prong of plain error review.

---

[3] The victim testified that she believes "[a] guy has more control over women," so the fact that Defendant was a man made her feel less in control. (R. Vol. III at 402.) We also note that the undisputed trial evidence established that Defendant had recently returned from playing semiprofessional football in Serbia. The jury could reasonably infer that Defendant's athletic background gave him much greater physical strength than his nineteen-year-old female victim, and it could accordingly consider this background as part of the "surrounding circumstances" relevant to its assessment of whether someone in the victim's circumstances would fear "serious harm" if she failed to comply with Defendant's directives. 18 U.S.C. § 1591(e)(4). We further note that the man with whom Defendant sometimes stayed—himself a collegiate football player—testified that there were times when he did not want Defendant "crashing at [his] dorm room," but he was "nervous to tell [Defendant] that [he] didn't want him there." (R. Vol. III at 563.)

Finally, Defendant argues that his conviction on Count 3 must be reversed for insufficiency of the evidence. Again, we review the record de novo, "asking if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Cornelius*, 696 F.3d at 1316 (internal quotation marks omitted).

This conviction was based on 18 U.S.C. § 2423(a), which prohibits the "knowing[] transport[ation of] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." Defendant contends that the evidence "was deficient in three ways: (1) [the government] never established [Defendant] knew [the seventeen-year-old victim] was a minor, (2) [the government] never established [Defendant] ever entered the state of Texas, and (3) [the government] failed to establish any trip to Texas had as a primary purpose that [the victim] engage in prostitution." (Appellant's Opening Br. at 25.)

We consider first Defendant's argument that the evidence was deficient because the government never established that Defendant knew his seventeen-year-old victim was a minor. Although Defendant asserts this as an element of the offense, he acknowledges that every circuit court to have considered this issue has ruled that 18 U.S.C. § 2423(a) does not require proof that a defendant knew the person he transported was under the age of eighteen. *See United States v. Tavares*, 705 F.3d 4, 18–20 (1st Cir. 2013); *United States v. Griffith*, 284 F.3d 338, 350–51 (2d Cir. 2002); *United States v. Hamilton*, 456

-11-

F.2d 171, 173 (3d Cir. 1972); *United States v. Washington*, 743 F.3d 938, 943 (4th Cir. 2014); *United States v. Daniels*, 653 F.3d 399, 410 (6th Cir. 2011); *United States v. Cox*, 577 F.3d 833, 836–38 (7th Cir. 2009); *United States v. Taylor*, 239 F.3d 994, 996 (9th Cir. 2001); *see also United States v. Daniels*, 685 F.3d 1237, 1249–50 (11th Cir. 2012) (adopting the reasoning of these decisions in the context of a conviction under 18 U.S.C. § 2422(b)). Nevertheless, Defendant contends that we should split from our sister circuits and hold that knowledge of the minor's age is an essential element of a conviction under § 2423(a) based on the reasoning of the Supreme Court in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), and *Flores-Figueroa v. United States*, 556 U.S. 646 (2009).

Our sister circuits have already persuasively explained why *X-Citement Video* and *Flores-Figueroa* do not require evidence that a defendant knew of a minor victim's age in order to be convicted under § 2423(a). In *X-Citement Video*, the Court held that there must be a scienter requirement for age in a child-pornography prosecution under 18 U.S.C. § 2252, because "the age of the performers is the crucial element separating legal innocence from wrongful conduct" and "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults." 513 U.S. at 72–73. "Here, however, the conduct prohibited by § 2423(a) is already unlawful under § 2421, and a defendant is 'already on notice that he is committing a crime when he transports an individual of any age in interstate commerce for the purpose of prostitution.'" *Cox*, 577 F.3d at 837 (quoting *Griffith*, 284 F.3d at 351).

-12-

"Since the Court's decision in *X-Citement Video* was directed at awareness of the elements that define circumstances upon which criminality turns, and since age in § 2423(a) is not a fact that distinguishes criminal behavior from innocent conduct (as it was in the statute at issue in *X-Citement Video*), § 2423(a) is best read as imposing a greater penalty on those persons who transport underage victims in interstate commerce for the purpose of prostitution." *Id.* (internal quotation marks and citation omitted). As for *Flores-Figueroa*, on which Defendant also relies, the Court held there that the word "knowingly" in the context of the aggravated-identity-theft statute, 18 U.S.C. § 1028A(a)(1), should "apply[] to all the subsequently listed elements of the crime." 556 U.S. at 650. However, the Court acknowledged that this was a "contextual" inquiry, *id.* at 652, and we agree with our sister circuits that "the context of § 2423(a) compels a reading of the statute that does *not* require 'knowingly' to be applied to the victim's age." *Daniels*, 653 F.3d at 410. In light of "congressional intent that minors [receive] special protection against sexual exploitation," it is appropriate for the "defendant—who would presumably know he is treading close to the line in transporting a young person to engage in illicit sexual activity—to bear the risk that the person transported is underage." *Id.* (citation omitted).

We agree with our sister circuits and hold that a conviction under § 2423(a) does not require proof that the defendant knew the victim was a minor. We therefore reject this challenge to the sufficiency of the evidence. As the First Circuit stated in *Tavares*, "[e]ven assuming . . . that the Government had not produced sufficient evidence of

[Defendant's] knowledge of [the victim's] age, such a failure is irrelevant." 705 F.3d at 20. The government was not required to prove that Defendant knew his victim was underage. It is enough that the government proved the victim was actually seventeen years old during the relevant time period.

We turn then to Defendant's remaining arguments that there is insufficient evidence to show either (1) that he entered the state of Texas or (2) that any interstate travel had prostitution as its primary purpose. Before addressing these arguments, we first pause to summarize the relevant evidence with respect to this count, which includes evidence relating to the other victims.

According to Defendant's roommate,[4] Defendant did not have a job, and his source of income was "pimping minors." (R. Vol. III at 557.) Defendant's roommate was familiar with the sixteen-year-old victim from Count 1 and the seventeen-year-old victim from Count 3, who frequently came to his dormitory with Defendant. The roommate did not remember being introduced to any other "girls that [Defendant was] pimping out." (*Id.* at 558.)

The sixteen-year-old victim testified that the seventeen-year-old victim "[p]retty much had the same relationship" with Defendant as she did (*id.* at 316), meaning that she

---

[4] Although we refer to this individual as Defendant's roommate for ease of reference, since Defendant often used the otherwise-unoccupied bedroom of his two-bedroom dormitory, we note that Defendant was not paying any rent and in fact was not supposed to be staying at the dormitory, since he was not a student at the university.

worked for him "[s]elling sex in exchange for money" (*id.* at 471). Both minors worked for him during the same time period, in November and December of 2015. With the exception of the nineteen-year-old victim from Count 2, whose sole act of prostitution for Defendant occurred on November 18, 2015, there is no indication in the record that any other individuals were trafficked by Defendant during this time period.

On November 22, 2015, Defendant sent a message to the sixteen-year-old victim saying that he intended to leave Kansas because "its more $$$ other places." (Suppl. App. at 84.) She responded: "I know. I was ready too go too Dallas. You knew that I was willing to leave family & all." (*Id.*) A few weeks later, on December 6, 2015, the sixteen-year-old told Defendant that they really needed to leave Wichita and that she had packed her things to go with him, but she could not leave until her mother left the house. Before she could leave with Defendant, however, the sixteen-year-old's guardian found her messages, realized what had been happening, and sent an angry message to Defendant telling him that he was going to jail.

Although Defendant's plans with the sixteen-year-old were thwarted, the seventeen-year-old victim ran away from home during this time period, and the trial evidence shows that Defendant was traveling with someone on the evening of December 6. A little after midnight in the early morning of December 7, Defendant sent a message to his roommate asking him to help Defendant rent a hotel room so he could "get money tonight." (*Id.* at 122.) Defendant's roommate offered his dormitory to Defendant, but Defendant responded that someone, presumably the police, had been there looking for

him, and that he needed a hotel room so he could make some money. He told his roommate he could not use his own name to rent the room because that would make him too easy to find. Defendant told his roommate he needed to make some money that night so he could buy a bus ticket back to his home state of Texas.

On December 6 or December 7, Defendant borrowed his roommate's car. At about 2:30 PM on December 7, his roommate texted him to ask where he was, and Defendant responded that he was "[o]n the road headed to Salina." (*Id.* at 121.) He told his roommate that he just "need[ed] a week max to stack and lay low." (*Id.*) A few hours later, at about 4:45 PM, Defendant told his roommate: "Everything good we checkin in the hotel." (*Id.*) At about 5:30 PM, Defendant asked his roommate to delete their texts and call history from his cell phone, "[j]ust to be safe." (*Id.*)

That evening, the police pinged Defendant's cell phone and found that it was located in Mesquite, Texas. Texas police responded to the location, which turned out to be a hotel near the highway. They found the seventeen-year-old victim at the hotel. They had a foot chase with another unidentified individual who had been at the hotel when they arrived, but they were unable to take that person into custody. The Texas police found Defendant's roommate's car in the hotel parking lot. In the hotel room associated with that car's license plate, they found clothes and some documents associated with Defendant, including a receipt for condoms he had purchased in Kansas a few days earlier.

With this background in mind, we turn to Defendant's argument that the government failed to present evidence from which a reasonable jury could find that he traveled to Texas. Defendant points out that there is no direct eyewitness evidence placing him in Texas, and he argues that the jury could not reasonably infer he traveled to Texas. He argues that the jury's verdict cannot be sustained on the basis that his cell phone, borrowed car, and documents were located at a hotel in Texas within hours after he sent a message from his cell phone to his roommate about checking into a hotel, since there are other possible explanations for this evidence. For instance, maybe he was trying to evade the police by giving his cell phone and his roommate's car to his victim, who then presumably decided to keep up the ruse by impersonating Defendant in numerous text messages to his roommate.[5] Defendant also suggests that any possible inference that he drove his roommate's car to Texas on December 7 is rebutted by (1) the text he sent to his roommate on December 6 about needing a hotel room so he could buy a bus ticket

_____

[5] Defendant also speculates that perhaps the phone he was using to communicate with his roommate is not the same phone the police used to locate him. There is no evidence in the record to support this speculation. Rather, all of the evidence in the record suggests that Defendant used the same phone number in all of his communications and that the police used this phone number to find him. At any rate, even if the jury could theoretically have speculated about a possible second phone, it was not required to do so. Taking the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the jury, the evidence supports the conclusion that Defendant was tracked to the hotel in Texas based on the same phone that had recently been used to contact his roommate.

back to Texas and (2) the text he sent to his roommate on December 7 about being on the road to Salina, which is in the opposite direction to Texas from Wichita.

We find none of Defendant's arguments to be persuasive. "Circumstantial evidence alone may permissibly support a jury's guilty verdict, and the government's evidence need not remove all doubt, but merely those doubts that are reasonable." *United States v. Hill*, 786 F.3d 1254, 1263 (10th Cir. 2015) (citation omitted). "[T]he mere existence of an alternative explanation does not require the finding of reasonable doubt." *United States v. Poe*, 556 F.3d 1113, 1126 n.16 (10th Cir. 2009). While "an inference must be more than speculation to be reasonable," the "jury has wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence." *Hill*, 786 F.3d at 1261 (internal quotation marks omitted). "An inference is reasonable if it flows from logical and probabilistic reasoning, i.e., with experience serving as the touchstone, a jury's inference is permissible where there is a reasonable probability that the conclusion flows from the facts in evidence." *Id.* (internal quotation marks omitted). Moreover, in reviewing a challenge to the sufficiency of the evidence, we must always view the evidence in the light most favorable to the government, not the defendant. *Cornelius*, 696 F.3d at 1316.

Viewing all of the evidence in this case in the light most favorable to the government, we conclude that the jury could reasonably infer, based on "logical and probabilistic reasoning," that the reason Defendant's cell phone was geolocated at a hotel in Texas after he texted his roommate that he had checked into a hotel was because

-18-

Defendant had indeed traveled to that Texas hotel. Contrary to Defendant's argument, the fact that he gave some conflicting information to his roommate does not negate such an inference. The jury was not required to accept all of Defendant's text messages to his roommate at face value, but could reasonably have inferred either that Defendant's plans changed after he texted his roommate, or that he was not entirely truthful in his communications with his roommate, perhaps because he did not want his roommate to know that he was taking his car on an interstate road trip, or perhaps because he was afraid that his roommate might intentionally or unintentionally lead the police to him. We therefore reject this challenge to the sufficiency of the evidence.

Defendant further argues that even if he did travel to Texas with his seventeen-year-old victim, there is no evidence from which a reasonable jury could find that he traveled to Texas "with a view toward" engaging his victim in sex-trafficking, *Mortensen v. United States*, 322 U.S. 369, 374 (1944). In *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997), we held that "illicit sexual activity need not be the only purpose for interstate travel" under § 2423, but it must be "one of the defendant's 'efficient and compelling purposes.'" (quoting *Dunn v. United States*, 190 F.2d 496, 497 (10th Cir. 1951)). Defendant argues that the government failed to satisfy this standard because (1) there is no eyewitness testimony that the minor was working for him as a prostitute in Kansas, and (2) even if she was engaging in commercial sex acts in Kansas, there is no evidence that a compelling purpose of the trip to Texas was to have the minor engage in prostitution in another state. Defendant argues that the principal reason for any trip that

-19-

occurred was "undoubtedly . . . so that [Defendant] could evade imminent arrest for his illegal relationship with [the sixteen-year-old victim from Count 1]," and thus we should reject a finding of criminal intent because he had an obvious "alternative purpose for the trip." (Appellant's Opening Br. at 45–47.)

As an initial matter, we must address the issue of the relevant standard to be applied. In *Meacham*, we phrased the issue in terms of whether the illicit sexual activity was a dominant or compelling "purpose for interstate travel." 115 F.3d at 1495. However, we believe it would be more accurate—and entirely consistent with our reasoning in *Meacham* and other precedents—to phrase the issue instead in terms of whether the illicit sexual activity was a dominant purpose for *transporting the minor* in interstate travel. After all, as the Second Circuit explained in *United States v. Vargas-Cordon*, 733 F.3d 366, 377 (2d Cir. 2013), "Section 2423(a) is concerned not with why a defendant travels, but rather with the question why he transports a minor." Thus, even if a defendant's primary purpose for the trip itself is to conduct legitimate business or to leave a particular state, his conviction may be sustained if one of his motivating or dominant reasons for bringing a minor with him on the trip is for illicit sexual activity. *See Meacham*, 115 F.3d at 1496 (affirming conviction for commercial trucker who primarily drove his truck for business, where jury could find that one of his dominant purposes for bringing a minor with him on a freight-hauling trip was to sexually molest her). Indeed, in the case on which *Meacham* relied, we phrased the question in terms of the defendant's purposes for transporting another individual, not his purposes for the

-20-

travel itself: "It suffices if one of the efficient and compelling purposes in the mind of the accused *in the particular transportation* was illicit conduct of that kind." *Dunn*, 190 F.2d at 497 (emphasis added). We believe this is a more accurate phrasing of the issue, and we therefore evaluate Defendant's conduct under this standard.

With this standard in mind, we are persuaded that a rational trier of fact could reasonably have inferred from the circumstantial evidence, taken in the light most favorable to the government, that one of Defendant's primary purposes for transporting the seventeen-year-old to Texas was to continue using her as a source of income there. First, taking the evidence in the light most favorable to the government, the jury could reasonably find that the seventeen-year-old victim was working as a prostitute for Defendant in Kansas based on the sixteen-year-old victim's testimony and other corroborating evidence. Second, the jury could reasonably infer, evaluating all of the trial evidence with " logical and probabilistic reasoning," *Hill*, 786 F.3d at 1261, that Defendant intended the seventeen-year-old victim to continue her prostitution activities in Texas. Defendant had previously discussed leaving Kansas with another of his minor victims because he believed he could make more money outside of Kansas. His only source of income was sex-trafficking, and, by the time he left for Texas, his only remaining prostitute was his seventeen-year-old victim. The night before he left for Texas, he sent text messages to his roommate about needing to rent a hotel room that night because he was in need of money, and the jury could reasonably infer that he intended to make this money by trafficking the seventeen-year-old. The jury could then

-21-

infer, based on the message Defendant sent to his roommate the next day about needing "a week max to stack and lay low," (Suppl. App. at 121), that Defendant intended to continue relying on his only remaining source of income—prostitution of his seventeen-year-old-victim—to make money while "lay[ing] low" in Texas.[6] Even if Defendant's primary reason for leaving Kansas was evading arrest—a somewhat debatable argument, in light of his previous discussions with another victim about wanting to leave Kansas soon because "its more $$$ other places" (Suppl. App. at 84)—the jury could reasonably infer that one of his compelling reasons for taking the minor with him was to continue using her to make money through illicit sexual activity.

After a thorough review of the parties' briefs and the record on appeal, we are not persuaded that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cornelius*, 696 F.3d at 1316. We therefore affirm this conviction as well.

Defendant's convictions and sentence are accordingly **AFFIRMED**.

---

[6] In denying Defendant's motion for acquittal, the district court likewise concluded that Defendant's statement about intending to "stack and lay low" could support the inference that Defendant planned to continue making a money while hiding out in Texas. Defendant argued in his opening brief that this conclusion "showed [a] shocking lack of knowledge or sensitivity about Black culture," since this phrase comes from a rap song that Defendant characterizes as "a Black ballad about frugality, working every day, and living a full life with friends and family." (Appellant's Opening Br. at 47–48.) In response, the government pointed out, among other things, that this song also includes the phrase, "[T]hey don't question what I say 'cause I'm a ladies['] pimp." (Suppl. App., Exhibit L, at 1:50–1:56.) Defendant did not return to this argument in his reply brief, and we see no merit to it.