FILED
United States Court of Appeals
Tenth Circuit

January 10, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAEDERICK CADELL LACY,

    Defendant - Appellant.

No. 23-3133
(D.C. Nos. 6:20-CV-01267-EFM &
6:16-CR-10009-EFM-1)
(D. Kan.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Defendant-Appellant Daederick Lacy, an inmate appearing through counsel, seeks a certificate of appealability (COA) to appeal from the denial of his 28 U.S.C. § 2255 motion based on ineffective assistance of trial counsel. Without a COA, we lack jurisdiction to consider the merits of Mr. Lacy's claims. 28 U.S.C § 2253(c)(1)(B). We deny a COA and dismiss the appeal.

## Background

Mr. Lacy was convicted of the following counts (1) sex trafficking of a child, 18 U.S.C. § 1591(a)(1), (2); sex trafficking accomplished by force, fraud, or coercion,

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

18 U.S.C. § 1591(a)(1), and (3) transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a). He was sentenced to 293 months' imprisonment on each count to run concurrently, and five years' supervised release on each count, again to run concurrently. His convictions and sentence were affirmed on direct appeal. United States v. Lacy, 904 F.3d 889 (10th Cir. 2018).

Mr. Lacy then filed his § 2255 motion. The district court appointed counsel, held an evidentiary hearing, and denied relief. United States v. Lacy, No. 6:20-CV-01267-EFM, 2023 WL 4234611, at *1 (D. Kan. June 28, 2023). To obtain a COA, Mr. Lacy must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the district court denied the constitutional claims on the merits rather than on procedural grounds, so Mr. Lacy must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The parties are familiar with the facts, so we need not restate them here. Briefly, the case centered on Mr. Lacy's commercial sex activities with three teen-aged women: a 19-year-old (S.G.) in count 2, a 16-year-old (B.J) in count 1, and a 17-year-old (S.B.) in count 3. B.J. and S.G. testified at trial. B.J. provided highly incriminating testimony about Mr. Lacy, his relationship with her, as well as the other young women. 3 R (17-3119) 312–13. She testified that he took pictures of her to post on the website Backpage, used fake names, made arrangements with the "calls", provided her with condoms, and took all of the money from the sex acts, aware of her age. Id. at 314–17. She also testified that S.B. "pretty much had the same relationship" with Mr. Lacy

including providing commercial sex acts.  Lacy, 904 F.3d at 898 (alteration omitted).  We mention other operative facts as necessary to discuss the claims.

Discussion

Given an evidentiary hearing, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo.  United States v. Orduno-Ramirez, 61 F.4th 1263, 1272 (10th Cir. 2023).  Ineffective assistance of counsel claims often involve mixed questions of law and fact but ultimately are reviewed de novo.  United States v. Rushin, 642 F.3d 1299, 1302 (10th Cir. 2011).

Ineffective assistance of counsel claims require a showing of deficient performance and prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient performance means "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Prejudice requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.  A defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A court may address an ineffective assistance claim in any order and need not consider both elements if one is not met.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

Mr. Lacy contends that his trial counsel rendered deficient performance as follows:  (1) an extremely brief opening statement; (2) lodging no objections to any

3

testimony, particularly to that of S.G. and Officer Nagy, who recounted what S.G. told him; (3) failing to object on authentication grounds to a trial exhibit (a Backpage ad depicting S.G. on an internet website); (4) failing to interview the alleged victims; and (5) failing to cross-examine S.G. concerning prior acts of prostitution. Aplt. Br. and Request for a COA at 7–19. We do not think that the district court's findings concerning the lack of deficient performance are reasonably debatable as to items (1), (3), and (4).

Regarding item (1), given that opening statements are entirely optional, trial counsel's brief opening statement essentially told the jury that the government could not prove its case — a permissible approach. Mr. Lacy faults trial counsel for not providing the jury with the defendant's theory of the case. He attributes this to a failure to properly investigate the case and develop the evidence. Trial counsel explained that he did not know how the victims would testify (particularly in light of Mr. Lacy's claim that they would not attend or would testify in his favor) and did not want to say something he could not support. 1 R. 1141. This tactical choice falls within the wide range of professional judgment, particularly given that waiver of an opening statement does not alone constitute ineffective assistance. See United States v. Summers, 539 F. App'x. 877, 879 (10th Cir. 2013); Clayton v. Gibson, 199 F.3d 1162, 1178 (10th Cir. 1999).

Insofar as item (3), Mr. Lacy contends that the Backpage ad was not properly authenticated through S.G. S.G. testified that she had seen the pictures in the ad before and twice identified herself. Thereafter, when asked whether those were the pictures that were posted online, she explained "Honestly, I still don't know what was posted online." 1 R. 397. Trial counsel did not object. The district court viewed the lack of objection as

4

tactical, not wanting to draw attention to the ad, and indicated that it probably would have come in through other witnesses. The government maintained that it would have come in through Detective Huhman, ECF No. 77, 2 Trial. Tr. at 177–78, or Detective Klump, ECF No. 78, 3 Trial Tr. at 99, as they were involved in obtaining it. 1 R. 1628.[1] Although Mr. Lacy contends that this is speculative, the Backpage ads were a central part of the prostitution operation. We do not think that the district court's conclusion of no deficient performance, under the circumstances, is reasonably debatable.

Finally, as to item (4), failure to interview the alleged victims, trial counsel testified that he expected the victims to appear despite Mr. Lacy's belief to the contrary. 1 R. 1135. Trial counsel attempted to track one of the victims down but was unable to locate her, and he already had their phone records, statements, and interviews. Id. Trial counsel confirmed that he had no need to clarify the statements and recounted the risks of interviewing these witnesses. Id. at 1199–07. These included generating unequivocal, consistent statements implicating the defendant, fomenting dislike for the defendant, and the potential for the interview to be viewed as harassment. Id. at 1199-1200. Under the circumstances and deferring to counsel's judgment concerning the risks, we do not think that the district court's decision is reasonably debatable, rather it is in line with the deference accorded to counsel's reasonable strategic choices.

---

[1] Of course, the purpose of authentication is to show that an item of evidence is what the proponent claims it to be. Fed. R. Evid. 901. We have noted that this is not a high bar, and even after authentication, a defendant is free to argue that the evidence is not reliable or not material — such arguments go to its weight, not its admissibility. United States v. Isabella, 918 F.3d 816, 843–44 (10th Cir. 2019); see also Taylor v. Sullivan, No. 2:18-cv-0637-MCE, 2019 WL 1923193, at *8 (E.D. Cal. Apr. 30, 2019).

5

For items (2) and (5), failure to object and failure to cross-examine, we turn to prejudice. The district court's conclusion that Mr. Lacy cannot show prejudice is not reasonably debatable. At the heart of this claim, Mr. Lacy maintains that S.G. gave equivocal testimony on the element of force or coercion, saying only that "she didn't feel safe, she felt belittled, and she felt like a child" that was bolstered by the inadmissible hearsay of Officer Nagy. Aplt. Br. and Request for a COA at 9–12. According to Mr. Lacy, trial counsel's failure to object to Officer Nagy's testimony was prejudicial. Aplt. Br. and Request for a COA at 9. But trial counsel did pursue this line of defense by undermining Officer Nagy's testimony during cross-examination. 1 R. 548–553. And when S.G. was asked why she did not alert a hotel desk clerk to her situation and request that the clerk call the police, far from equivocating, she testified:

> Why would I -- why would I go tell someone I'm being held against my will? If I'm being held against my will, I'm more concerned about my safety, I'm more concerned about me trying to live than me trying to go tell somebody my issues, because I don't even know -- like I just know that at that time I didn't felt [sic] in control, I just didn't even feel safe. So -- and [Mr. Lacy's] a guy. A guy has more control over women. And at that time, that's what I felt. So I'm not going to go out of line because I don't know him. I don't know if he has a gun. I don't know him. I'm not gonna put my life in jeopardy . . . .

1 R. 431. Moreover, we considered a similar argument about the hearsay testimony of Officer Nagy (and another officer) in Mr. Lacy's direct appeal and rejected it. See Lacy, 904 F.3d at 894–896. We concluded that Mr. Lacy could not show a reasonable probability that, but for the testimony, he would not have been convicted. Id. at 896. Although Mr. Lacy argues that S.G. merely testified as to a loss of control and that trial

6

counsel did not adequately test her credibility, the record is otherwise and contains strong incriminating evidence.

Regarding trial counsel's failure to cross-examine S.G. about alleged prior acts of prostitution, the district court's conclusion is not reasonably debatable. According to Mr. Lacy, such evidence would have been relevant (a) to dispel an inference that S.G. would have only engaged in the sexual conduct here if forced or coerced and (b) to counter S.G.'s direct testimony suggesting she was a moral person. The district court noted a post-trial decision explaining that "[e]vidence that a sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was coerced into working as a prostitute at a later date." United States v. Palms, 21 F.4th 689, 703 (10th Cir. 2021). Although Mr. Lacy argues that at the time of his 2017 trial, the law was unsettled, we agree with the district court that several circuits had already so held and note that it is extremely doubtful that a trial court would let such evidence in.

Finally, Mr. Lacy argues cumulative error insofar as urging us to discount the rejection of his hearsay claim on direct appeal and instead aggregate all the alleged errors of trial counsel. Aplt. Br. and Request for a COA at 24–25. The district court rejected this claim, finding that it was not raised and was inapplicable for lack of any error. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir. 2003) (quoting United States v. Toles, 297 F.3d 959, 972 (10th Cir. 2002)). We aggregate any prejudice from ineffective assistance of counsel even when such

7

claims are dismissed for lack of prejudice under <u>Strickland</u>.  <u>Harmon v. Sharp</u>, 936 F.3d 1044, 1083 (10th Cir. 2019).  Considering claims 2 and 5 collectively (which are easily resolved on lack of prejudice), Mr. Lacy falls far short of demonstrating a reasonable probability that the result of his trial would have been different, and rejection of the claim is not reasonably debatable.

We DENY a COA and DISMISS the appeal.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge